[This opinion has been published in *Ohio Official Reports* at 80 Ohio St.3d 261.]

THE STATE EX REL. GANNETT SATELLITE INFORMATION NETWORK, INC.,

D.B.A. THE CINCINNATI ENQUIRER, *v*. PETRO, STATE AUDITOR, ET AL.

THE STATE EX REL. THE WARREN NEWSPAPERS, INC. *v*. COURT OF

JURISDICTION OF THE MAHONING VALLEY SANITARY DISTRICT ET AL.

[Cite as *State ex rel. Gannett Satellite Info. Network, Inc. v. Petro*,

1997-Ohio-319.]

*Mandamus to compel State Auditor to provide relators access to all records relied*

*on in audit of Mahoning Valley Sanitary District—Writ granted, when—*

*Attorney fees for relators granted, when.*

(Nos. 97-1876 and 97-1893—Submitted October 1, 1997—Decided October 3,

1997.)

IN MANDAMUS.

———————————

{¶ 1} The Mahoning Valley Sanitary District ("MVSD") is a political subdivision of the state of Ohio established to provide water service for the cities of Youngstown and Niles. Respondent Mahoning Valley Sanitary District Court of Jurisdiction ("MVSD Court"), which is constituted according to the last paragraph of R.C. 6115.08, supervises the operation of the MVSD. In March 1996, following newspaper accounts of improprieties concerning the MVSD, the MVSD Court requested that respondent State Auditor Jim Petro conduct a special audit of certain MVSD expenditures and transactions over a five-year period. Petro agreed to investigate the MVSD and issue a report but emphasized that the report would not constitute an audit and would be solely for the use of the MVSD Court and the MVSD.

{¶ 2} Petro, however, conducted a special audit of the MVSD and relied on the MVSD's records in order to complete the audit. The working papers relied on

by the auditor included copies of records obtained from the special prosecutor for the Mahoning County Fraud Task Force. The special prosecutor obtained these records pursuant to grand jury subpoenas. The special prosecutor had been appointed to investigate corruption involving public officials in Mahoning County. Prior to August 25, 1997, Petro made all records used in his audit available for public inspection.

{¶ 3} On August 7, 1997, Petro publicly released his preliminary special audit report of the MVSD. Among other things, Petro determined that former MVSD Director Edward A. Flask had exercised his authority over MVSD contracts and expenditures to garner personal benefit and political influence. On August 25, Petro released his final report to the public. Shortly thereafter, the MVSD Court issued orders precluding Petro from further disclosing the report.

{¶ 4} Petro then refused the requests of relators, Gannett Satellite Information Network, Inc., d.b.a. The Cincinnati Enquirer ("Gannett"), and The Warren Newspapers, Inc. ("Warren Newspapers"), for access to most of the records, although he did provide Gannett with a copy of the special audit report and a minimal number of working papers. Petro advised relators that the audit report and working papers relating to the report were public records but that he could not provide them access due to the MVSD Court's orders.

{¶ 5} Petro subsequently filed a complaint in this court for a writ of prohibition to, among other things, prevent the MVSD Court from enforcing its orders preventing further public release of Petro's special audit report. *State ex rel. Petro v. Mahoning Valley Sanitary Dist. Court of Jurisdiction*, case No. 97-1840. While that case was pending, relators filed these actions for writs of mandamus to compel the MVSD Court and Petro to provide access to all records relied on by Petro in his audit of the MVSD.

**{¶ 6}** On September 10, Petro filed a notice voluntarily dismissing his prohibition action based on a settlement agreement with the MVSD Court. Under the agreement, Petro and the MVSD Court stipulated:

"D. *The parties also agree that the report/special audit, together with the supporting documentation, including responses, the Auditor's work papers, reports, depositions, and transcripts of conferences between these parties, shall all be and constitute public records pursuant to R.C. 149.43*, Ohio Public Records Law, and copies shall be housed at the Auditor's Niles or Youngstown, Ohio office, at the Auditor's option. Accordingly, any persons or entities, including those subject to a recovery action, are entitled to review and copy the aforemen-tioned documents, in order to make public comment, if any, regarding their views of the report/special audit." (Emphasis added.)

**{¶ 7}** Despite his earlier representations and the foregoing agreement, Petro subsequently denied relators' requests for access to the records that had been originally obtained by the special prosecutor in response to grand jury subpoena. Petro claimed that these records were exempted from disclosure because they were grand jury materials under Crim.R. 6(E) and investigatory work product under R.C. 149.43(A)(2)(c). Petro conceded that he did not have "any detailed knowledge of the future plans of the Task Force and/or the special prosecutor" concerning these records. Although Petro requested the special prosecutor to examine the records to determine whether they were exempt from disclosure under R.C. 149.43, the special prosecutor did not reply.

**{¶ 8}** Petro publicly disclosed a grand jury subpoena requesting these records as well as his special audit report and an index that contained detailed descriptions of the records. Petro's office further orally described the withheld records to a Warren Newspapers representative. The MVSD Court has ordered Petro to make available for public inspection all records in his possession that were

identified in paragraph D of their settlement agreement "and/or that are public records."

{¶ 9} These causes are now before the court on the merits, respondent Petro's motion to consolidate, Gannett's motion to dismiss the MVSD Court as a party, Warren Newspapers' notice voluntarily dismissing the MVSD Court, and Warren Newspapers' motions to amend its complaint to include a claim for attorney fees against Petro.

————————————

*Graydon, Head & Ritchey*, *John C. Greiner* and *John A. Flanagan*, for relator Gannett Satellite Information Network, Inc.

*Arter & Hadden*, *Gregory V. Mersol*, *John B. Lewis* and *John P. Gartland*, for relator The Warren Newspapers, Inc.

*Betty D. Montgomery*, Attorney General, and *Arthur J. Marziale, Jr.*, Assistant Attorney General, for respondent.

————————————

*Per Curiam.*

Motions

{¶ 10} We initially grant Petro's motion to consolidate these cases. Relators do not oppose Petro's motion, and the cases raise similar legal issues. See, *e.g., State ex rel. Cincinnati Enquirer v. Hamilton Cty.* (1996), 75 Ohio St.3d 374, 376, 662 N.E.2d 334, 336.

{¶ 11} We also grant relators' requests to dismiss the MVSD Court as a party. The uncontroverted evidence establishes that the MVSD Court is no longer preventing Petro from publicly disclosing the requested records. See, also, S.Ct.Prac.R. X(2); Civ.R. 15(A) and 41(A).

{¶ 12} In addition, we grant relators' requests to amend their complaints to include claims for attorney fees against Petro. S.Ct.Prac.R. X(2); Civ.R. 15(A). While relators did not initially request these fees based on Petro's representations

4

that he was only following the MVSD Court's orders, Petro subsequently denied access to many of the working papers used in connection with his audit. *State ex rel. Jones v. Montgomery Cty. Court of Common Pleas* (1996), 75 Ohio St.3d 642, 643, 665 N.E.2d 673, 674 (In mandamus actions, courts are not limited to considering facts and circumstances at the time a proceeding is commenced, but should consider facts and conditions at the time it determines whether to issue the writ.). Petro does not oppose a consideration of these attorney fees claims.

R.C. 149.43; Audit Reports

**{¶ 13}** Relators assert that they are entitled to a writ of mandamus to compel Petro to provide access to the requested records. "[T]he purpose of Ohio's Public Records Act, R.C. 149.43, is to expose government activity to public scrutiny, which is absolutely essential to the proper working of a democracy." *State ex rel. WHIO-TV-7 v. Lowe* (1997), 77 Ohio St.3d 350, 355, 673 N.E.2d 1360, 1364; *White v. Clinton Cty. Bd. of Commrs.* (1996), 76 Ohio St.3d 416, 420, 667 N.E.2d 1223, 1226-1227. Mandamus is the appropriate remedy to compel compliance with R.C. 149.43. *State ex rel. Steckman v. Jackson* (1994), 70 Ohio St.3d 420, 426-427, 639 N.E.2d 83, 89. R.C. 149.43 must be construed liberally in favor of broad access, and any doubt is resolved in favor of disclosure of public records. *State ex rel. Gannett Satellite Info. Network, Inc. v. Shirey* (1997), 78 Ohio St.3d 400, 401, 678 N.E.2d 557, 559.

**{¶ 14}** In general, audits, audit drafts, and working papers and notes relating to audits of public offices are public records that are subject to disclosure under R.C. 149.43, even where the audit was performed by a private entity on behalf of a public office. *State ex rel. Mazzaro v. Ferguson* (1990), 49 Ohio St.3d 37, 550 N.E.2d 464; see, also, R.C. 117.26. Even if, as initially contended by the MVSD Court, Petro's investigation and report were not a statutory audit, Petro, a public officer, relied on the records to perform his investigation of the MVSD, a public office, and the working papers thus would normally constitute public records. *Id.*,

49 Ohio St.3d at 40, 550 N.E.2d at 467 ("[B]y construing R.C. 149.011[G] to include any material on which a public office could or did rely, our decision preserves the public's right of access to public records * * *."); *State ex rel. Thomas v. Ohio State Univ.* (1994), 71 Ohio St.3d 245, 246-247, 643 N.E.2d 126, 128 ("R.C. 149.011[G] broadly defines 'records' to include 'any * * * device, or item * * * received by * * * any public office of the state * * * which serves to document the organization, functions, policies, decisions, procedures, operations, or other activities of the office.' ").

{¶ 15} With the foregoing standards in mind, we consider relators' contentions.

## Waiver

{¶ 16} Relators initially contend that Petro and the special prosecutor waived any rights Petro had to rely on exemptions. Exemptions are usually fully applicable absent evidence that the public office having custody of the records disclosed the records to the public. *State ex rel. WLWT-TV5 v. Leis* (1997), 77 Ohio St.3d 357, 361, 673 N.E.2d 1365, 1369-1370; *State ex rel. Zuern v. Leis* (1990), 56 Ohio St.3d 20, 22, 564 N.E.2d 81, 84. For the following reasons, Petro and the special prosecutor waived Petro's right to deny access to records based on claimed exemptions.

{¶ 17} First, the special prosecutor released copies of the records to Petro for use in his special audit. The prosecutor should have been aware that records which Petro considered in his audit of a public entity would be subject to disclosure under R.C. 149.43. *Mazzaro* and *Thomas, supra*. Second, Petro made these records available to the public prior to the MVSD Court's orders barring access. *Zuern*, 56 Ohio St.3d at 22, 564 N.E.2d at 84 ("Voluntary disclosure can preclude later claims that records are exempt from release as public records."). Third, Petro represented to relators that the records were public records and that they would be provided access to all working papers involved in his audit when his prohibition case was

settled. Fourth, Petro disclosed a grand jury subpoena requesting the records. Fifth, Petro publicly released his special audit report and a detailed index of the records, which described the records withheld. Sixth, Petro orally described these records to a representative of Warren Newspapers. Finally, although Petro contacted the special prosecutor, the special prosecutor has not asserted that the records requested by relators are exempt.

{¶ 18} Based on all of the foregoing circumstances, Petro waived his right to assert exemptions to disclosure of the requested records. Unlike *State ex rel. Master v. Cleveland* (1996), 76 Ohio St.3d 340, 343, 667 N.E.2d 974, 976-977, this is not simply a case in which prior publicity is asserted to support the media's waiver contention.

{¶ 19} Further, for the reasons that follow, even assuming that Petro did not waive the claimed exemptions, they are inapplicable here.

Crim.R. 6(E); Grand Jury Materials

{¶ 20} Petro contends that the records are exempt because they are grand jury materials under Crim.R. 6(E). Public records do not include "[r]ecords the release of which is prohibited by state or federal law." R.C. 149.43(A)(1)(*o*). Crim.R. 6(E) exempts certain grand jury materials from disclosure under R.C. 149.43. *WLWT-TV5*, 77 Ohio St.3d at 361, 673 N.E.2d at 1369; *State ex rel. Beacon Journal Publishing Co. v. Waters* (1993), 67 Ohio St.3d 321, 617 N.E.2d 1110. More specifically, Crim.R. 6(E) provides:

"Deliberations of the grand jury and the vote of any grand juror shall not be disclosed. Disclosure of other matters occurring before the grand jury may be made to the prosecuting attorney for use in the performance of his duties. A grand juror, prosecuting attorney, interpreter, stenographer, operator of a recording device, or typist who transcribes recorded testimony, may disclose matters occurring before the grand jury, other than the deliberations of a grand jury or the vote of a grand juror, but may disclose such matters only when so directed by the court preliminary

to or in connection with a judicial proceeding, or when permitted by the court at the request of the defendant upon a showing that grounds may exist for a motion to dismiss the indictment because of matters occurring before the grand jury. * * * *No obligation of secrecy may be imposed upon any person except in accordance with this rule.*" (Emphasis added.)

{¶ 21} The records here do not include either grand jury deliberations or the vote of a grand juror. In addition, the State Auditor is not one of the persons listed in Crim.R. 6(E) regarding the disclosure of other "matters occurring before the grand jury," like records submitted in response to a grand jury subpoena. Therefore, Crim.R. 6(E) does not exempt disclosure by Petro of the requested records, which he obtained from the special prosecutor, who had in turn received them in response to grand jury subpoenas. See, generally, 1 Wright, Federal Practice and Procedure (1982) 246, Section 106 (No obligation of secrecy can be imposed on any person except those specified in Fed.R.Crim.P. 6[E], which is analogous to Crim.R. 6[E].). Petro's reliance on *WLWT-TV5* and *Waters* is misplaced because in both of those cases, the prosecutor, as opposed to a person not specified in Crim.R. 6(E), refused access to the grand jury records.

R.C. 149.43(A)(2)(c); Work Product

{¶ 22} Petro also contends that the records are exempt work product under R.C. 149.43(A)(2)(c), which includes within the definition of exempt "confidential law enforcement investigatory record" records the release of which "would create a high probability of disclosure of * * * specific investigatory work product."

{¶ 23} The work product exemption does not apply. First, Petro did not introduce evidence that established the applicability of the work product exemption. Exemptions from disclosure must be strictly construed against the public records custodian, and the custodian has the burden to establish an exemption. *State ex rel. McGowan v. Cuyahoga Metro. Hous. Auth.* (1997), 78 Ohio St.3d 518, 519, 678 N.E.2d 1388, 1389. Information assembled by law

enforcement officials in connection with a pending or highly probable criminal proceeding constitutes exempt work product under R.C. 149.43(A)(2)(c). See, *e.g., State ex rel. Leonard v. White* (1996), 75 Ohio St.3d 516, 517, 664 N.E.2d 527, 529. In refusing Gannett's request for access to the records, Petro admitted that his office did "not have any detailed knowledge of the future plans of the Task Force and/or the special prosecutor," *i.e.*, no knowledge that the records obtained by grand jury subpoena were in connection with a pending or highly probable criminal proceeding.

**{¶ 24}** Second, given Petro's disclosure of other records, such as the index and audit report, and oral statements describing the withheld records, it is doubtful that disclosure of these working papers would *create* a high probability of disclosure of investigatory work product, as required for R.C. 149.43(A)(2)(c). Cf. *State ex rel. Plain Dealer Publishing Co. v. Lesak* (1984), 9 Ohio St.3d 1, 4, 9 OBR 52, 54, 457 N.E.2d 821, 824 (Celebrezze, C.J., concurring).

**{¶ 25}** Finally, the requested records consist largely of nonexempt public records, *e.g.*, newspaper articles, MVSD contracts and records, and records of campaign contributions. Records which are unquestionably nonexempt do not become exempt simply because they are placed in a prosecutor's file or, as in this case, are the subject of grand jury subpoenas. *WLWT-TV5*, 77 Ohio St.3d at 361, 673 N.E.2d at 1370; *Cincinnati Enquirer,* 75 Ohio St.3d at 378, 662 N.E.2d at 338.

**{¶ 26}** Therefore, relators are entitled to writs of mandamus to compel Petro to provide access to the requested records. Petro waived any exemptions and, even assuming no waiver, the exemptions are inapplicable.

Attorney Fees

**{¶ 27}** Relators also claim attorney fees. Relators have established a sufficient public benefit by satisfaction of the public's right to know. *State ex rel. Olander v. French* (1997), 79 Ohio St.3d 176, 180, 680 N.E.2d 962, 965. The records involve alleged improprieties concerning a public office, which were

initially disclosed to the public as a result of articles based on prior public records requests. In addition, Petro did not have a reasonable basis to preclude access to the requested records. *Id.*, 79 Ohio St.3d at 179, 680 N.E.2d at 964-965. In fact, he had previously represented to relators that the records were public and that he would disclose them but for the MVSD Court's orders. Therefore, relators are entitled to an award of attorney fees against Petro.

Conclusion

**{¶ 28}** Accordingly, we grant relators writs of mandamus compelling respondent Petro to provide access to requested records, grant relators attorney fees against Petro, and order relators to submit bills and documentation in support of their requests for attorney fees in accordance with the guidelines set forth in DR 2-106.

*Writs granted and*
*attorney fees granted.*

MOYER, C.J., PFEIFER, COOK and LUNDBERG STRATTON, JJ., concur.

RESNICK and F.E. SWEENEY, JJ., concur separately.

DOUGLAS, J., not participating.

———————————

**ALICE ROBIE RESNICK, J., concurring separately.**

**{¶ 29}** I join with the majority in finding that relators are entitled to writs of mandamus compelling Petro to provide access to the requested records. I also join with the majority in finding that relators are entitled to awards of attorney fees. However, I do not agree with all of the reasoning employed by the majority.

**{¶ 30}** I would simply find that the records must be disclosed because Petro and the special prosecutor waived the right to assert any exemptions that were raised or that could have been raised. I view the remainder of the majority's discussion regarding the inapplicability of possible exemptions "assuming that

10

Petro did not waive the claimed exemptions" as mere surplusage that is not essential to the resolution of this case.

{¶ 31} Furthermore, I disagree with the majority's application of a "public benefit" test to support the award of attorney fees against Petro. Relators are prevailing parties under R.C. 149.43(C) and should be entitled to mandatory awards of attorney fees. See *State ex rel. Olander v. French* (1997), 79 Ohio St.3d 176, 180-181, 680 N.E.2d 962, 965-966 (Douglas, J., dissenting, joined by Resnick and Francis E. Sweeney, JJ.); *State ex rel. Pennington v. Gundler* (1996), 75 Ohio St.3d 171, 175-178, 661 N.E.2d 1049, 1052-1054 (Francis E. Sweeney, J., concurring in part and dissenting in part, joined by Douglas and Resnick, JJ.).

F.E. SWEENEY, J., concurs in the foregoing concurring opinion.

————————————