[This opinion has been published in *Ohio Official Reports* at 89 Ohio St.3d 440.]

THE STATE EX REL. OHIO PATROLMEN'S BENEVOLENT ASSOCIATION ET AL. *v.*
CITY OF MENTOR ET AL.

[Cite as *State ex rel. Ohio Patrolmen's Benevolent Assn. v. Mentor*,
2000-Ohio-214.]

*Mandamus to compel city of Mentor et al. to provide respondents access to certain Mentor Police Department internal affairs investigative reports, and city payroll and overtime records—Writ granted in part and denied in part—Relators entitled to award of attorney fees only insofar as their public records claims had merit.*

(No. 99-1552—Submitted May 23, 2000—Decided August 16, 2000.)

IN MANDAMUS.

_____

{¶ 1} This case involves the public records requests of relators, Ohio Patrolmen's Benevolent Association ("OPBA") and Mentor Police Officers Daniel R. Grein and Timothy Baker, for access to certain Mentor Police Department internal affairs investigative reports and city payroll and overtime records. OPBA is the exclusive collective bargaining representative for all police officers employed by respondent city of Mentor.

*Internal Affairs Investigative Report: Possible Hazing Incidents*

{¶ 2} In March 1998, respondent Mentor Police Chief Richard A. Amiott initiated an internal affairs investigation to determine whether Mentor police officers had participated in an arm-burning initiation ritual. In these incidents, which had originated in the early 1980s and continued until 1998, Mentor police officers who had completed their probationary periods engaged in a "tough man" competition, usually with Mentor Police Lieutenant Larry R. Staton. A lit cigar or cigarette was placed between the forearm of the officer who had just completed

probation and Staton's forearm and it remained there until one of the officers pulled his or her forearm away. These incidents, which resulted in burns and scarring, occurred in bars or restaurants when the officers were off duty and not in police uniform. The incidents were unstructured, with no one person responsible for organizing them. The officers who participated in the competition with Staton did so voluntarily, and these officers did not receive preferential treatment over those officers who did not. Staton did not solicit officers to participate in these activities, but he also did not refuse to participate when asked.

{¶ 3} In April 1998, the police detective who had conducted the internal affairs investigation sent a report to Chief Amiott. The detective concluded that there appeared to be no criminal law violations, including hazing as prohibited by R.C. 2903.31, but he recommended that administrative disciplinary charges be brought against nineteen police officers and one city employee for their respective roles in the incidents. Amiott nevertheless continued the investigation due to the nature of the acts involved, potential civil liability of the city and the police department, and his desire to protect the image of Mentor and its police department.

{¶ 4} In April 1999, Amiott received a supplemental investigative report that found the ritual had not occurred since the previous report and that it had evidently been discontinued. Amiott then forwarded the investigatory file to the Lake County Prosecuting Attorney's Office for a determination of whether any criminal charges should be brought against Staton or any other Mentor police officers.

{¶ 5} In May and July 1999, Officer Baker requested that Amiott provide him with access to the hazing investigation records. Amiott refused access to these records. Amiott claimed that the requested records were exempt from disclosure because the investigation had not been completed.

{¶ 6} On July 25, 1999, the Lake County Prosecuting Attorney's Office informed Amiott that no criminal charges would be brought against any Mentor

2

police officer as a result of the arm-burning incidents. The prosecutor's office decided that it could not prove criminal conduct beyond a reasonable doubt because none of the officers complained about the incidents. After receiving an evaluation of the investigative records concluding that Staton "showed a grave lapse of judgment and a reckless disregard for the health and welfare of the officers under his watch," Amiott issued a proposed disciplinary action against Staton, recommending Staton's demotion to the rank of patrol officer and declaring him ineligible for promotion for five years.

{¶ 7} On August 3, 1999, Amiott received a statement signed by twenty Mentor police officers in which they admitted having knowledge of the arm-burning incidents and requested that they be added to the list of officers who allegedly failed to report the incidents, in violation of police department rules. Amiott continued the investigation because of the new statement.

*Internal Affairs Investigation: Spetrino Citizen's Complaint*

{¶ 8} In February 1999, Amiott reviewed a citizen's complaint filed by William M. Spetrino against certain Mentor police officers and ordered an investigation. In July 1999, Officer Grein requested access to these investigative records. Amiott denied Grein's request because the investigation had not been completed. According to Amiott, the investigation "involves multiple acts of criminal conduct, and will likely lead to the filing of criminal charges."

*Payroll and Overtime Records*

{¶ 9} In February 1999, OPBA requested access from respondent Mentor Assistant City Manager Dan Graybill to the following records:

"1) For the period of November, 1996 through and including October 1998, all records, documents or other written instruments reflecting use of sick leave by each employee of the Mentor Police Department including all ranking officers, the Police Chief, and the two (2) Police Captains.

"2)  For the calendar years of 1996, 1997, and 1998, a listing of or other documentation of all training or instructional programs attended by any member of the Mentor Police department including the Police Chief and the two (2) Police Captains.

"3)  Any memorandum or other written document that relates to 'the review' as referenced in the Mentor Police Department memorandum 'PD99-004.'

"4)  All performance evaluations for the calendar year 1997 for all Mentor Police Department patrolmen.

"5)  All documents including, but not limited to, payroll records, that relate to all monies paid to * * * or benefits provided to former City employees, Richard M. Lynch, Thomas Fracci and Joseph Koziol during or following their last year of employment with the City of Mentor."

{¶ 10} On March 16, 1999, Amiott provided access to most of the requested records.

{¶ 11} In April 1999, OPBA requested the following additional records concerning Amiott and his two police captains:  (1) all time records showing that overtime was actually worked, (2) all requests for authorization to work in excess of forty hours per week, and (3) all requests for permission to use compensatory time.  OPBA repeated its request for these records in May 1999.  The latter two categories of records in OPBA's April and May 1999 requests do not exist.

*Mandamus*

{¶ 12} In August 1999, relators, OPBA and Mentor Police Officers Grein and Baker, filed this action for a writ of mandamus to compel respondents, city of Mentor, Mentor Police Department, Mentor Police Chief Amiott, Mentor City Manager Julian Suso, and Mentor Assistant City Manager Dan Graybill, to provide access to the internal affairs investigative reports on the purported hazing incidents and the Spetrino complaint, as well as the requested payroll and overtime records. Relators also requested attorney fees and costs.  We referred this cause for a

settlement conference under S.Ct.Prac.R. XIV(6). *State ex rel. Ohio Patrolmen's Benevolent Assn. v. Mentor* (1999), 86 Ohio St.3d 1465, 715 N.E.2d 567.

{¶ 13} In September 1999, as mediation progressed, respondents provided relators with copies of the internal affairs investigative report of the possible hazing, as well as additional payroll records that had been inadvertently excluded from the records previously provided to relators by respondents. Respondents filed an answer and numerous exhibits, and they submitted the investigative report concerning the Spetrino complaint to the court for an *in camera* inspection.

{¶ 14} In January 2000, Mentor appointed an independent investigator to determine whether to present the Spetrino matter to the grand jury for indictment. In the same month, Amiott recommended that Officers Grein and Steven Graham be terminated from employment because of the Spetrino internal affairs investigation.

{¶ 15} Mediation concluded and, following the return of this case to the regular docket, we dismissed relators' claims regarding payroll, overtime, and hazing investigative records as moot, granted an alternative writ on relators' remaining claims concerning the Spetrino investigative records and their request for attorney fees, and issued a schedule for the presentation of evidence and briefs. *State ex rel. Ohio Patrolmen's Benevolent Assn. v. Mentor* (2000), 88 Ohio St.3d 1425, 723 N.E.2d 1113.

{¶ 16} This cause is now before the court.

_____

*Climaco, Lefkowitz, Peca, Wilcox & Garofoli Co., L.P.A.*, *Joseph Hegedus* and *Mark J. Volcheck*, for relators.

*Johnson & Angelo*, *Gary C. Johnson*, *Thomas L. Colaluca* and *Jeffrey C. Miller*, for respondents.

_____

*Per Curiam.*

*Mandamus:  Spetrino Investigative Records*

**{¶ 17}** Relators assert that they are entitled to a writ of mandamus to compel respondents to provide them with access to the Spetrino investigative records under R.C. 149.43, Ohio's Public Records Act.  R.C. 149.43 mandates full access to all public records upon request unless the requested records fall within one of the specified exemptions.  *State ex rel. Besser v. Ohio State Univ.* (2000), 87 Ohio St.3d 535, 538, 721 N.E.2d 1044, 1047.  In fact, public employee personnel records, including personnel records of police officers reflecting discipline, are generally regarded as public records, absent proof of an exemption.  *State ex rel. Multimedia, Inc. v. Snowden* (1995), 72 Ohio St.3d 141, 142-143, 647 N.E.2d 1374, 1377-1378.

**{¶ 18}** Respondents claim that the Spetrino records are exempt from disclosure as confidential law enforcement investigatory records under R.C. 149.43(A)(1)(h).  R.C. 149.43(A)(1)(h) exempts confidential law enforcement investigatory records from the definition of "[p]ublic record[s]," and R.C. 149.43(A)(2) defines these records to include:

"[A]ny record that pertains to *a law enforcement matter of a criminal, quasi-criminal, civil, or administrative nature, but only to the extent that the release of the record would create a high probability of disclosure of any of the following:*

"(a) *The identity of a suspect who has not been charged with the offense to which the record pertains*, or of an information source or witness to whom confidentiality has been reasonably promised;

"(b) Information provided by an information source or witness to whom confidentiality has been reasonably promised, which information would reasonably tend to disclose the source's or witness's identity;

"(c) Specific confidential investigatory techniques or procedures or *specific investigatory work product*;

"(d) *Information that would endanger the life or physical safety of* law enforcement personnel, *a crime victim, a witness*, or a confidential information source." (Emphasis added.)

{¶ 19} The applicability of the R.C. 149.43(A)(2) confidential-law-enforcement-investigatory-record exemption requires, first, that the records pertain to a law enforcement matter of a criminal, quasi-criminal, civil, or administrative nature, and, second, that the release of the records would create a high probability of disclosure of any of the four types of information specified in R.C. 149.43(A)(2). See *State ex rel. Yant v. Conrad* (1996), 74 Ohio St.3d 681, 684, 660 N.E.2d 1211, 1214.

{¶ 20} The first requirement is satisfied because the records pertain to a law enforcement matter of a criminal, quasi-criminal, civil, or administrative nature. As in comparable cases, " '[t]he investigation herein was of specific alleged misconduct, not a routine monitoring investigation.' " *Yant*, 74 Ohio St.3d at 684, 660 N.E.2d at 1214, quoting *State ex rel. Polovischak v. Mayfield* (1990), 50 Ohio St.3d 51, 53, 552 N.E.2d 635, 637 (both involving Bureau of Workers' Compensation investigations of bureau employees' alleged misconduct). The Spetrino investigative records were generated by the alleged misconduct of several Mentor police officers specified in Spetrino's citizen's complaint rather than general, routine employment and personnel inquiries ancillary to law enforcement matters. Cf. *State ex rel. Freedom Communications, Inc. v. Elida Community Fire Co.* (1998), 82 Ohio St.3d 578, 581, 697 N.E.2d 210, 214 (community fire company's investigation of alleged sexual assault involving two employees after police closed their separate investigation); *Multimedia*, 72 Ohio St.3d at 143, 647 N.E.2d at 1378 (investigations routinely conducted and part of personnel records of each police recruit).

{¶ 21} And even if the internal affairs investigation of the Spetrino complaint were considered routine, there is no automatic, *per se* exclusion of all

routine police criminal investigations from the first step of the R.C. 149.43(A)(2) definition of confidential law enforcement investigatory record. *State ex rel. Natl. Broadcasting Co. v. Cleveland* (1991), 57 Ohio St.3d 77, 80, 566 N.E.2d 146, 149.

{¶ 22} For the second requirement of the record exemption, respondents claim that release of the Spetrino investigative records would create a high probability of disclosure of specific investigatory work product under R.C. 149.43(A)(2)(c), information that would endanger the life or physical safety of a witness under R.C. 149.43(A)(2)(d), and the identity of an uncharged suspect under R.C. 149.43(A)(2)(a). Respondents also assert that relators are not entitled to access to the records because the investigation is ongoing and not yet completed.

{¶ 23} Exempt work product is information assembled by law enforcement officials in connection with a *pending* or *highly probable* criminal proceeding. *State ex rel. Gannett Satellite Info. Network, Inc. v. Petro* (1997), 80 Ohio St.3d 261, 266-267, 685 N.E.2d 1223, 1228. Investigative materials do not constitute work product when it is not evident that a crime has occurred, because the records are then compiled by law enforcement officials in part to determine if any crime has occurred and not necessarily in anticipation of litigation. *State ex rel. Leonard v. White* (1996), 75 Ohio St.3d 516, 518, 664 N.E.2d 527, 529.

{¶ 24} Based on these standards, the work-product exemption does not apply to the Spetrino investigative records. No criminal proceeding resulting from the Spetrino investigation was either pending or highly probable when relators requested access to the investigative records. *Id.*; *Cleveland Police Patrolmen's Assn. v. Cleveland* (1996), 110 Ohio App.3d 796, 801-802, 675 N.E.2d 501, 504; see, also, *State ex rel. Glover v. Lashutka* (Dec. 31, 1996), Franklin App. No. 96APD10-1433, unreported, 1996 WL 751548, applying *Leonard* to hold that "[t]he fact that this investigation could lead to civil and/or criminal proceedings, however, is not sufficient to bring it under the R.C. 149.43(A)(2)(c) exception for 'specific investigatory work product.' " The sealed investigative records indicate

8

that crimes may not have occurred. In fact, respondents concede that, even when they filed their merit brief, "a possibility exist[ed] that formal charge[s] w[ould] not be sought."

{¶ 25} The R.C. 149.43(A)(2)(d) witness-endangerment exemption is also inapplicable. As respondents admit, "the record does not indicate a high probability of danger to the life or physical safety of a witness."

{¶ 26} Moreover, to the extent that respondents claim that the records are exempt because the investigation concerning the Spetrino matter is still ongoing, R.C. 149.43 does not contain an "ongoing investigation" exemption for public records. See *Yant*, 74 Ohio St.3d at 683-684, 660 N.E.2d at 1213-1214 (relator is entitled to investigative records despite public office's claim that investigation had been "reopened").

{¶ 27} Nevertheless, the evidence establishes that the Spetrino investigative records are exempt to the extent that their release would reveal the identities of uncharged suspects under R.C. 149.43(A)(2)(a). Respondents' evidence shows that an active criminal investigation is being conducted concerning the Spetrino matter.

{¶ 28} Despite the foregoing evidence, relators contend that the uncharged-suspect exemption does not apply to the Spetrino records because of widespread publicity concerning the Spetrino investigation, respondents' failure to claim this exemption until after this mandamus action was initiated, respondents' use of *Garrity* warnings[1] during investigative interviews of police officers, and the absence of pending or highly probable criminal charges.

---

1. The warning given to police officers questioned during the Spetrino investigation provided:

"I wish to advise you that you are being questioned as part of an official investigation of the Mentor Police Department. You will be asked questions specifically directed and narrowly related to the performance of your official duties or fitness for office. You are entitled to all the rights and privileges guaranteed by the laws and the Constitution of this state and the Constitution of the United States, including the right not to be compelled to incriminate yourself. I further wish to advise you that if you refuse to testify or to answer questions relating to the performance of your official duties or fitness for duty, you will be subject to departmental charges which could result in your dismissal from the Mentor Police Department. If you do answer, neither your statements nor

**{¶ 29}** Relators' assertions are meritless. The uncharged-suspect exemption may still apply even though the accusation of criminal conduct is already public knowledge. *State ex rel. Master v. Cleveland* (1996), 76 Ohio St.3d 340, 342, 667 N.E.2d 974, 975-976 ("*Master II*"). Here, as in *Master II*, the publicity concerning the investigation did not preclude application of the uncharged-suspect exemption because release of the records would subject suspects to additional adverse publicity and might compromise subsequent efforts to resolve the matter, and respondents have not voluntarily disclosed the records and thereby waived the application of the uncharged-suspect exemption. *Master II*, 76 Ohio St.3d at 342-343, 667 N.E.2d at 976-977; *State ex rel. WLWT-TV5 v. Leis* (1997), 77 Ohio St.3d 357, 361, 673 N.E.2d 1365, 1369-1370; *State ex rel. Strothers v. McFaul* (1997), 122 Ohio App.3d 327, 333, 701 N.E.2d 759, 762-763 (court rejected argument that uncharged-suspect exemption did not apply where identity of suspect had been revealed in pleadings from litigation, a summary released by the sheriff's office, and television newscasts).

**{¶ 30}** Further, respondents' failure to specify the uncharged-suspect exemption as a basis for withholding the Spetrino investigative record until after this action was filed does not prohibit the applicability of the exemption. See *State ex rel. Plain Dealer Publishing Co. v. Cleveland* (1996), 75 Ohio St.3d 31, 34, 661 N.E.2d 187, 190 ("[E]xceptions to disclosure under R.C. 149.43 are not affirmative defenses, and the city's failure to raise the exceptions it now relies on does not prohibit the court from considering them.").

**{¶ 31}** Moreover, the mere fact that police officers interviewed during the Spetrino investigation received *Garrity* warnings did not mean that it could not be

---

any information or evidence which is gained by reason of such statements can be used against you in any subsequent criminal proceedings. However, these statements may be used against you in relation to subsequent departmental charges." (Sealed Exs. G and H, P2.) See *Garrity v. New Jersey* (1967), 385 U.S. 493, 87 S.Ct. 616, 17 L.Ed.2d 562; *In re Civ. Serv. Charges & Specs. Against Piper* (2000), 88 Ohio St.3d 308, 309, 725 N.E.2d 659, 660, fn. 1.

a criminal investigation with criminal suspects. *Garrity* precludes the use, in subsequent criminal proceedings against a public employee, only of evidence obtained as a result of that employee's interrogation and does not prevent the use of other investigatory evidence or another employee's interrogation statements in a subsequent criminal proceeding.

{¶ 32} In addition, the absence of pending or highly probable criminal charges is not fatal to the applicability of the uncharged-suspect exemption. See *State ex rel. Master v. Cleveland* (1996), 75 Ohio St.3d 23, 29-30, 661 N.E.2d 180, 185-186 ("*Master I*") (uncharged suspect exemption may apply even if work-product exemption does not); *Strothers*, 122 Ohio App.3d at 333-334, 701 N.E.2d at 763.

{¶ 33} Therefore, respondents are entitled to withhold those portions of the Spetrino investigative records that, if released, would create a high probability of disclosure of the identity of uncharged suspects. *Master I*, 75 Ohio St.3d at 30-31, 661 N.E.2d at 186.

{¶ 34} But the protected identities of uncharged suspects are not inextricably intertwined with all of the remaining records so as to exempt the totality of the Spetrino investigative records. Cf. *Master II*, 76 Ohio St.3d at 342, 667 N.E.2d at 976. And certain records, *e.g.*, copies of newspaper articles and statutes, are unquestionably nonexempt and do not become exempt simply because they are placed in an investigative or prosecutorial file. *Gannett*, 80 Ohio St.3d at 267, 685 N.E.2d at 1229; *WLWT-TV5*, 77 Ohio St.3d at 361, 673 N.E.2d at 1370. This conclusion comports with our duty in public records cases to strictly construe exemptions from disclosure. *State ex rel. Cleveland Police Patrolmen's Assn. v. Cleveland* (1999), 84 Ohio St.3d 310, 312, 703 N.E.2d 796, 797.

{¶ 35} Accordingly, we grant a writ of mandamus to compel respondents to give relators access to those portions of the Spetrino investigative records that do not disclose identities of uncharged suspects or are otherwise unquestionably

nonexempt records, *e.g.*, news articles and statutes. We deny the writ for the remaining portions of the records that, if released, would create a high probability of disclosure of the identities of uncharged suspects. See R.C. 149.43(A)(1)(h) and (2)(a).

*Attorney Fees*

{¶ 36} Relators also request an award of attorney fees incurred by them in this mandamus action. Relators requested four different categories of records in this case: (1) the hazing investigative records, (2) the Spetrino investigative records, (3) payroll records, and (4) compensatory and overtime records.

{¶ 37} Relators are not entitled to attorney fees concerning those claims that were meritless. For example, the compensatory and overtime records either did not exist or were disclosed to relators before this action was filed. See *State ex rel. Warren v. Warner* (1999), 84 Ohio St.3d 432, 433, 704 N.E.2d 1228, 1229 ("[N]o duty under R.C. 149.43 to create documents to meet [requester's] demands."). And most of the requested payroll records were provided to relators before they filed this action.

{¶ 38} In addition, relators received copies of some of the requested records after they filed this mandamus case, *i.e.*, the hazing investigative records and certain payroll records that had been inadvertently excluded from the records provided to relators before this action. Respondents' post-action disclosure of these records rendered their claims for these records moot. *State ex rel. Wadd v. Cleveland* (1998), 81 Ohio St.3d 50, 52, 689 N.E.2d 25, 27.

{¶ 39} The mootness of these claims does not preclude an award of attorney fees. Under *State ex rel. Pennington v. Gundler* (1996), 75 Ohio St.3d 171, 661 N.E.2d 1049, syllabus, "[a] court may award attorney fees pursuant to R.C. 149.43 where (1) a person makes a proper request for public records pursuant to R.C. 149.43, (2) the custodian of the public records fails to comply with the person's request, (3) the requesting person files a mandamus action pursuant to R.C. 149.43

to obtain copies of the records, and (4) the person receives the requested public records only after the mandamus action is filed, thereby rendering the claim for a writ of mandamus moot." Relators met the second, third, and fourth *Pennington* requirements for the hazing investigative and payroll records.

{¶ 40} For the remaining *Pennington* requirement of a proper request for public records, the hazing investigative records, like the Spetrino investigative records, were not exempt under the RC. 149.43(A)(2)(c) work-product or (2)(d) witness-endangerment exemptions. They were, however, exempt for the same reasons as the Spetrino records, to the extent that the uncharged-suspect exemption of R.C. 149.43(A)(2)(a) applied. Neither the prosecutor's decision not to file criminal charges against any officer based on the hazing investigation nor the passage of time with no enforcement action diminished the viability of this exemption. *Polovischak* at syllabus; *State ex rel. Thompson Newspapers, Inc. v. Martin* (1989), 47 Ohio St.3d 28, 546 N.E.2d 939, paragraph two of the syllabus. But only those portions of the hazing investigative records identifying the suspects were exempt, so respondents should have provided access to relators to the remainder of these records.

{¶ 41} Therefore, relators may be entitled to attorney fees, but only insofar as their public records claims had merit, *i.e.*, for those portions of the investigative records that do not disclose the identities of uncharged suspects or are otherwise nonexempt records and the few payroll records that had been inadvertently excluded by respondents among the records that they provided to relators before this mandamus action. In other words, " 'the party against whom an award of fees [in an R.C. 149.43 public records action] is assessed should be responsible for those fees incurred only as a direct result of that party's failure to produce the public record.' " *State ex rel. Lucas Cty. Bd. of Commrs. v. Ohio Environmental Protection Agency* (2000), 88 Ohio St.3d 166, 175, 724 N.E.2d 411, 420, quoting *Gannett Satellite*, 81 Ohio St.3d at 1235, 690 N.E.2d at 12.

**{¶ 42}** We hold that, under the circumstances of this case, relators are entitled to an award of attorney fees, but only insofar as their public records claims had merit. Therefore, we order relators to submit a new bill and documentation limited to the attorney fees expended on their meritorious public records claims.

**{¶ 43}** Based on the foregoing, we grant the writ of mandamus compelling respondents to provide access to Spetrino investigative records, excepting those parts that contain identifying information regarding uncharged suspects, to which the writ is denied.

*Writ granted in part and denied in part.*

MOYER, C.J., RESNICK, F.E. SWEENEY, PFEIFER, COOK and LUNDBERG STRATTON, JJ., concur.

DOUGLAS, J., concurs in judgment.

————————————