[Cite as *Pitzer v. Wilmington*, 2024-Ohio-5141.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

CLINTON COUNTY

| | | |
|---|---|---|
| GREG PITZER, | : | CASE NO. CA2024-02-002 |
| Appellant, | : | |
| | : | O P I N I O N<br>10/28/2024 |
| - vs - | : | |
| | : | |
| THE CITY OF WILMINGTON, OHIO, | : | |
| Appellee. | : | |

CIVIL APPEAL FROM CLINTON COUNTY COURT OF COMMON PLEAS
Case No. CVH 20230048

Thompson Legal LLC, and Robert L. Thompson, for appellant.

Fishel Downey Albrecht & Riepenhoff LLC, and David Moser, for appellee.

**M. POWELL, J.**

{¶ 1} Appellant, Greg Pitzer, appeals a decision of the Clinton County Court of Common Pleas denying his petition for a writ of mandamus to compel appellee, the city of Wilmington, Ohio (the "City"), to provide him certain records.

{¶ 2} In March 2013, Casey Pitzer was found dead floating in a retention pond. Pitzer is Casey's father. The Wilmington Police Department investigated Casey's death

and ruled it was an accidental drowning. In May 2013, believing that his daughter's death was a result of foul play and a homicide, Pitzer requested from the City all available records related to its investigation of Casey's death. On July 25, 2013, the City provided its entire investigatory file to Pitzer. On October 1, 2022, Pitzer submitted a second public records request to the City, seeking numerous records. As pertinent to this appeal, Pitzer's request included the security camera video of a Buffalo Wild Wings ("BW3 security video"), a photograph of the boots Casey was wearing which were recovered from where she was found, and the video interviews of Mike Hartley and Brandon Reed.

{¶ 3} Pitzer's request was forwarded to Brad Reynolds, the City's Human Resources Director. Reynolds engaged outside legal counsel to review the request and the City's records and prepare a response. On October 31, 2022, the City's contracted legal counsel issued a response to Pitzer which included the City's entire investigatory file. The response included redactions counsel deemed required by law. The response did not include the video interviews of Mike Hartley and Brandon Reed. The response advised Pitzer that the interviews were exempt from disclosure pursuant to the "uncharged suspect" exception.

{¶ 4} On February 6, 2023, unsatisfied with the City's response and believing it was withholding documents, Pitzer filed a petition for a writ of mandamus in the trial court, seeking to compel the City to provide him with the documents he had requested in October 2022. The City filed a Civ.R. 12(B)(6) motion to dismiss, which was accompanied by the affidavit of Reynolds. Reynold's affidavit stated that (1) the BW3 security video did not exist and/or was never in the City's possession, (2) all photographs taken on-scene and throughout the investigation by former Detective Josh Riley that were in the City's possession had already been provided to Pitzer in 2013, and (3) the requested video interviews were exempt from disclosure under the "uncharged suspect" exception.

- 2 -

{¶ 5} Pitzer filed a response and numerous supporting exhibits, asserting that he had never received Detective Riley's photograph of Casey's boots which was referenced in the detective's 2013 incident report narrative, and challenging the City's assertion that the BW3 security video did not exist. Pitzer pointed out that one of the City's exhibits accompanying Reynolds' affidavit specifically shows that former Detective Scott Baker obtained and reviewed the video, and described its contents, to wit, the clothes Casey was wearing and the specific alcoholic beverages she consumed. The City filed a reply, which was accompanied by the affidavit of Wilmington Police Chief Ron Fithen. Regarding the photograph of the boots, the police chief acknowledged that "[t]he report does state that former Chief Detective Riley took photos of the boots," however, "I checked the entire case file and could not locate photos of the boots." Regarding the BW3 security video, the police chief acknowledged that "the video contents are described in a narrative by former Detective Scott Baker," however, "I did not locate a CD/DVD titled BW3, even after checking all the files on each individual CD [found in the case file]. . . . I cannot provide an item I do not have."

{¶ 6} A hearing was held on the matter on November 17, 2023. During the hearing, the trial court twice referred to the City's Civ.R. 12(B)(6) motion to dismiss as a motion for summary judgment. On January 24, 2023, the trial court denied Pitzer's petition for a writ of mandamus and dismissed the case as follows: "Having considered the motion, affidavits, and arguments," the court found that the City had provided the requested record as was required by law and in a timely manner. The trial court found it could not order records the City did not have "nor has [Pitzer] proven by clear and convincing evidence that the [City] has any records the city states it does not have."

{¶ 7} Pitzer now appeals, raising two assignments of error which will be considered in reverse order.

- 3 -

{¶ 8} At the outset, we address the trial court's apparent conversion of the City's Civ.R. 12(B)(6) motion to dismiss into a motion for summary judgment without notice to the parties. As stated above, the City supported its Civ.R. 12(B)(6) motion with Reynolds' affidavit. The trial court twice referred to the City's motion as one for summary judgment at the hearing, indicated it had considered affidavits in its judgment entry, and found that the "mandamus petition [was] moot and the motion to dismiss by [the City] [was] well taken."

{¶ 9} A Civ.R. 12(B)(6) motion to dismiss tests the sufficiency of a complaint. *Volbers-Klarich v. Middletown Mgt., Inc.*, 2010-Ohio-2057, ¶ 11. Thus, the movant is not permitted to support its motion to dismiss by relying on allegations or evidence outside the complaint. *Id.* Likewise, a trial court may consider only the statements and facts contained in the pleadings in ruling on a Civ.R. 12(B)(6) motion to dismiss and may not consider or rely on evidence outside the complaint. *Brust v. Franklin Cty. Sheriff's Office*, 2015-Ohio-5090, ¶ 6 (10th Dist.). "When a Civ.R. 12(B)(6) motion depends on extrinsic evidence, the proper procedure is for the court to convert the motion to dismiss into a motion for summary judgment and provide the opposing party with notice and an opportunity to respond. *State ex rel. Evans v. Mohr*, 2018-Ohio-5089, ¶ 5. Failure to notify the parties that the court is converting a Civ.R. 12(B)(6) motion to dismiss into one for summary judgment is, itself, reversible error. *State ex rel. Baran v. Fuerst*, 55 Ohio St.3d 94, 97 (1990). Nonetheless, "a conversion of a motion to dismiss into a motion for summary judgment may be accomplished with the implied consent of the parties where, as here, both parties submit evidence beyond the allegations of the complaint and do not raise the conversion as an issue on appeal." *AAA Am. Constr., Inc. v. Alpha Graphic*, 2005-Ohio-2822, ¶ 4 (8th Dist.).

{¶ 10} Pitzer and the City both submitted evidence beyond the allegations of the

complaint, do not raise the conversion as an issue on appeal, and in fact argue the case as though the trial court granted summary judgment. We therefore review the trial court's judgment as one granting summary judgment in favor of the City. Summary judgment is proper when there is no genuine issue of material fact remaining for trial, the moving party is entitled to judgment as a matter of law, and reasonable minds can only come to a conclusion adverse to the nonmoving party, construing the evidence most strongly in that party's favor. Civ.R. 56(C). An appellate court reviews a trial court's decision on a motion for summary judgment de novo, independently and without deference to the decision of the trial court. *Paramount Farms Intl., L.L.C. v. Ventilex B.V.*, 2016-Ohio-1150, ¶ 16 (12th Dist.).

{¶ 11} Assignment of Error No. 2:

{¶ 12} THERE ARE ISSUES OF MATERIAL FACT AS TO THE EXISTENCE OF THE BUFFALO WILD WINGS VIDEO AND PHOTOS OF CASEY'S BOOTS.

{¶ 13} Pitzer argues the trial court erred in denying a writ of mandamus to compel production of the BW3 security video and the photograph of the boots. Pitzer asserts there are genuine issues of material fact regarding the City's failure to provide him with these records because the City's investigatory file confirms the existence of these items, yet the City did not provide them to him.

{¶ 14} "Mandamus is the appropriate remedy to compel compliance with R.C. 149.43, Ohio's Public Records Act." *State ex rel. McCaffrey v. Mahoning Cty. Prosecutor's Office*, 2012-Ohio-4246, ¶ 16. Although R.C. 149.43 is construed liberally in favor of broad access and any doubt is resolved in favor of disclosure of public records, "the relator must still establish entitlement to the requested extraordinary relief by clear and convincing evidence." *Id.* Thus, to be entitled to a writ of mandamus, Pitzer was required to show by clear and convincing evidence that he requested a record that exists

- 5 -

and is in the City's possession. *State ex rel. Griffin v. Sehlmeyer*, 2021-Ohio-3624, ¶ 4.

{¶ 15} Pitzer has not established that the photograph of Casey's boots and the BW3 security video still exist and are in the City's possession by the requisite clear and convincing evidence. Reynolds' affidavit and the police chief's affidavit aver that each reviewed the City's investigatory file regarding Casey's death and provided Pitzer with all the records contained in the file in response to Pitzer's requests. While the police chief's affidavit acknowledges that both records once existed, it further avers that the records are not in the City's possession based upon an extensive search of the investigatory file. An affidavit from a public official averring that all responsive records have been provided satisfies a respondent's burden to establish it has provided the requested records. *State ex rel. Toledo Blade Co. v. Toledo-Lucas Cty. Port Auth.*, 2009-Ohio-1767, ¶ 15. There is no duty under R.C. 149.43 to create records that no longer exist or to create or provide access to nonexistent records. *State ex rel. Toledo Blade Co. v. Seneca Cty. Bd. of Commrs.*, 2008-Ohio-6253, ¶ 27; *Griffin* at ¶ 4. While Pitzer honestly believes the City has not provided him with all the records in the investigatory file, his good faith belief that certain records exist "does not constitute sufficient evidence to establish that the documents do exist, and there is no duty under R.C. 149.43 for respondents to detail the steps taken to search for records responsive to the requests." *State ex rel. Patton v. Rhodes*, 2011-Ohio-3093, ¶ 17.

{¶ 16} We note that Pitzer does not argue on appeal that the City improperly disposed of the BW3 security video and the photograph of the boots or otherwise assert a spoliation claim. In a public records mandamus case involving deleted emails, the Ohio Supreme Court held, "to be entitled to the recovery of deleted e-mails, the Blade must make a prima facie showing that the e-mails were deleted in violation of the county's records-retention-and-disposition policy." *Seneca Cty. Bd. of Commrs.* at ¶ 29. "In the

absence of evidence to the contrary, public officers, administrative officers and public boards, within the limits of the jurisdiction conferred by law, will be presumed to have properly performed their duties and not to have acted illegally but regularly and in a lawful manner." *Id.*

**{¶ 17}** Pitzer's second assignment of error is overruled.

**{¶ 18}** Assignment of Error No. 1:

**{¶ 19}** THE INTERVIEWS OF THE SUSPECTS DURING THE INVESTIGATION INTO CASEY PITZER'S DEATH ARE NOT EXEMPT UNDER THE UNCHARGED SUSPECT EXCEPTION.

**{¶ 20}** Pitzer argues the trial court erred in finding that the video interviews of Mike Hartley and Brandon Reed were exempt from disclosure under R.C. 149.43(A)(2)(a), the uncharged-suspect exception.

**{¶ 21}** "R.C. 149.43(A)(1)(h) excepts '[c]onfidential law enforcement investigatory records' from the definition of '[p]ublic record' for purposes of the Public Records Act." *State ex rel. Musial v. N. Olmsted*, 2005-Ohio-5521, ¶ 17. R.C. 149.43(A)(2)(a) exempts from release records that identify individuals who have neither been charged with nor arrested for an offense. *State ex rel. Master v. Cleveland*, 75 Ohio St.3d 23, 30, 1996-Ohio-228. Because the City invoked the uncharged-suspect exception to disclosure, it bears the burden to plead and prove facts clearly establishing the applicability of the exception. *State ex rel. Meyers v. Meyers*, 2022-Ohio-1915, ¶ 30. Because exceptions to disclosure under R.C. 149.43 are strictly construed against the public-records custodian, the custodian does not satisfy its burden if it has not proven that the requested records fall squarely within the exception. *Id.*

**{¶ 22}** A court employs a two-step test to determine whether a record is exempt as a confidential law-enforcement record under R.C. 149.43. *Musial* at ¶ 18. "First, is the

record a confidential law enforcement record? Second, would release of the record 'create a high probability of disclosure' of any one of the four kinds of information specified in R.C. 149.43(A)(2)?'" *Id.* at ¶ 19. Pitzer concedes that the first prong is satisfied but generally argues that the second prong is not satisfied because Mike Hartley and Brandon Reed are not "suspects." A "suspect" is a "person believed to have committed a crime or offense." *Id.* at ¶ 23. A "charge" is a "formal accusation of an offense as a preliminary step to prosecution." *Id.* The uncharged-suspect exemption may still apply even though the accusation of criminal conduct is already public knowledge. *State ex rel. Ohio Patrolmen's Benevolent Assn. v. Mentor*, 89 Ohio St.3d 440, 447, 2000-Ohio-214.

{¶ 23} The trial court did not err in exempting the video interviews of Mike Hartley and Brandon Reed from disclosure under R.C. 149.43(A)(2)(a) because the City clearly established the applicability of the uncharged-suspect exception. The police chief's affidavit avers that "[b]oth individuals were interviewed on video and . . . have been deemed uncharged suspects as the cause of death per the coroner was Freshwater Drowning and Acute Alcohol Intoxication. There is no evidence that proves a criminal act occurred and as such, . . . an uncharged suspect interview cannot be released as it does not constitute a public record under Ohio law." "The uncharged suspect exception applies despite the passage of time, the lack of enforcement action, or a prosecutor's decision not to file formal charges." *Master*, 75 Ohio St.3d at 30. Even "releasing information about uncharged suspects in inactive criminal investigations could compromise later efforts to reopen and solve those inactive cases." *State ex rel. Moreland v. Dayton*, 67 Ohio St.3d 129, 131 (1993). Pitzer has not presented any evidence to rebut the police chief's averment the two individuals were suspects.

{¶ 24} In light of all of the foregoing, the trial court did not err in denying Pitzer's petition for a writ of mandamus. Pitzer's first assignment of error is overruled.

{¶ 25} Judgment affirmed.

BYRNE, P.J., and HENDRICKSON, J., concur.