[This opinion has been published in *Ohio Official Reports* at 75 Ohio St.3d 171.]

THE STATE EX REL. PENNINGTON, APPELLANT, *v.* GUNDLER, CLERK,

APPELLEE.

[Cite as *State ex rel. Pennington v. Gundler*, 1996-Ohio-161.]

*Public records—Party seeking public records entitled to award of attorney fees where custodian of public records fails to comply with a proper request under R.C. 149.43 and complies only after a mandamus action is filed— Award of attorney fees under R.C. 149.43(C) is mandatory.*

A court may award attorney fees pursuant to R.C. 149.43 where (1) a person makes a proper request for public records pursuant to R.C. 149.43, (2) the custodian of the public records fails to comply with the person's request, (3) the requesting person files a mandamus action pursuant to R.C. 149.43 to obtain copies of the records, and (4) the person receives the requested public records only after the mandamus action is filed, thereby rendering the claim for a writ of mandamus moot. (*State ex rel. Toledo Blade Co. v. Northwood* [1991], 58 Ohio St.3d 213, 569 N.E.2d 904, overruled.)

(No. 94-1658—Submitted September 12, 1995—Decided March 4, 1996.)

APPEAL from the Court of Appeals for Butler County, No. CA93-09-0172.

_____

{¶ 1} Appellant, Kathy Pennington, was the defendant in a case brought in the Hamilton Municipal Court, Small Claims Division. In August 1993, Thomas N. Carroll, the owner of an independent paralegal service retained by Pennington's counsel, went to the office of the Clerk of the Hamilton Municipal Court to collect certified copies of Pennington's case file.

{¶ 2} Deputy Clerk Cloud refused to give Carroll the requested documents. Carroll reminded the deputy clerk that the documents sought were public records, but the deputy clerk responded by stating that she would not give Carroll anything

until she talked to Pennington's counsel. The deputy clerk then tried to place a telephone call to the attorney. The deputy clerk left a message on an answering machine stating that she could not give the attorney's representative any documents until the attorney returned her earlier call.

{¶ 3} In response to Carroll's request for a written explanation for her refusal to copy the public records, the deputy clerk typed out a note stating that she needed to discuss the status of the case with the attorney first. Carroll left the clerk's office without the requested public records.

{¶ 4} On September 2, 1993, Pennington filed a mandamus action in the First District Court of Appeals seeking an order compelling the Clerk of the Hamilton Municipal Court to provide her certified copies of the docket sheet and every other paper filed in her case and requesting attorney fees. The clerk, predecessor in office of Maria Gundler, appellee, filed an answer attaching copies of the requested records and also mailed certified copies of these records to Pennington's counsel. Pennington conceded in the court of appeals that the clerk's production of the records rendered her claim for a writ a mandamus moot.

{¶ 5} The court of appeals denied Pennington's request for attorney fees based upon *State ex rel. Toledo Blade Co. v. Northwood* (1991), 58 Ohio St.3d 213, 569 N.E.2d 904.

{¶ 6} The cause is now before this court upon an appeal as of right.

_____

*John J. Mueller*, for appellant.

*Hillary G. Miller*, Hamilton Assistant Director of Law, for appellee.

_____

**MOYER, C.J.**

{¶ 7} The issue presented in this appeal is whether a party seeking public records is entitled to an award of attorney fees where the custodian of the public records initially fails to comply with a proper request made pursuant to Ohio Public

Records Act, R.C. 149.43, then complies with the request in response to a mandamus action.

{¶ 8} Pennington concedes that the clerk's production of the records rendered her prayer for mandamus moot, but contends that she is entitled to attorney fees under R.C. 149.43(C). It is not and cannot be disputed that the records requested by Pennington are public records and should have been given to the agent of Pennington's lawyer upon his request for the records. R.C. 1901.31(E).

{¶ 9} Ohio law generally requires explicit statutory authorization or a finding of conduct that amounts to bad faith in order for a prevailing party to recover attorney fees. See, *e.g., Vance v. Roedersheimer* (1992), 64 Ohio St.3d 552, 556, 597 N.E.2d 153, 156; *State ex rel. Caspar v. Dayton* (1990), 53 Ohio St.3d 16, 20, 558 N.E.2d 49, 53. R.C. 149.43(C) provides the explicit statutory authorization for the award of attorney fees.

{¶ 10} R.C. 149.43(C) provides:

"If a person allegedly is aggrieved by the failure of a governmental unit to promptly prepare a public record and to make it available to the person for inspection in accordance with division (B) of this section, or if a person who has requested a copy of a public record allegedly is aggrieved by the failure of a person responsible for it to make a copy available to the person in accordance with division (B) of this section, *the person allegedly aggrieved may commence a mandamus action to obtain a judgment that orders the governmental unit or the person responsible for the public record to comply with division (B) of this section and that awards reasonable attorney's fees to the person that instituted the mandamus action. \*\*\*"* (Emphasis added.)

{¶ 11} It is well established that "'[i]n construing a statute, a court's paramount concern is the legislative intent in enacting the statute. \*\*\* In determining legislative intent, the court first looks to the language in the statute and the purpose to be accomplished.'" *State ex rel. Carter v. Wilkinson* (1994), 70 Ohio

St.3d 65, 66, 637 N.E.2d 1, 2, quoting *State v. S.R.* (1992), 63 Ohio St.3d 590, 594-595, 589 N.E.2d 1319, 1323. It is equally well settled that words used in a statute are to be taken in their usual, normal and customary meaning. R.C. 1.42. Further, absent ambiguity, the court must give effect to the plain meaning of a statute. *State v. Waddell* (1995), 71 Ohio St.3d 630, 631, 646 N.E.2d 821, 822.

{¶ 12} In *State ex rel Fox v. Cuyahoga Cty. Hosp. Sys.* (1988), 39 Ohio St.3d 108, 529 N.E.2d 443, we settled the issue of whether the awarding of attorney fees to a party who files a complaint pursuant to R.C. 149.43 is mandatory. Paragraph two of the syllabus states succinctly and clearly, "The award of attorney fees under R.C. 149.43(C) is not mandatory." We are not persuaded that the statute should now be interpreted differently.

{¶ 13} The remaining question is whether a court may, in its discretion, award attorney fees to a party who has filed a complaint pursuant to R.C. 149.43 and has received requested documents before judgment is entered. That was the issue in *State ex rel. Toledo Blade Co. v. Northwood* (1991), 58 Ohio St.3d 213, 569 N.E.2d 904. We answered in a *per curiam* opinion that R.C. 149.43(C) "does not contemplate an award of attorney fees in mandamus actions rendered moot by the voluntary production of a record." *Id*. at 214, 569 N.E.2d at 905. Our conclusion was founded on our belief that to construe R.C. 149.43(C) as permitting an award of attorney fees even when a copy of the requested public record had been provided would discourage record production after a mandamus action has been commenced. Since *Toledo Blade,* we have observed other instances in which custodians of public records have denied access to public records only to turn them over to the person requesting them after a mandamus action had been filed. *E.g.*, *State ex rel. Clark v. Toledo* (1992), 62 Ohio St.3d 452, 584 N.E.2d 662. In some instances, there are legitimate legal questions presented by a refusal to disclose records that are purportedly public. Exceptions "may not be self-evident on a document's face." *State ex rel. Lowery v. Cleveland* (1993), 67 Ohio St.3d 126,

128, 616 N.E.2d 233, 234. In other instances, requested records are clearly public and should be given to the person requesting them without the necessity of filing an action pursuant to R.C. 149.43. It would be difficult to imagine a case that demonstrates any more dramatically the latter circumstances than the case before us.

{¶ 14} There can be no question that records sought by Pennington were public records and should have been given to Pennington in the form and within the time required by law. Pennington should not have been required to expend the resources and the time required to file a mandamus action in order to obtain public records from the Clerk of the Hamilton Municipal Court.

{¶ 15} In view of the absence of an express statutory prohibition and the proclivity of some custodians of public records to force the filing of a mandamus action by a citizen to gain access to records that are obviously public, we hold that a court may award attorney fees pursuant to R.C. 149.43 where (1) a person makes a proper request for public records pursuant to R.C. 149.43, (2) the custodian of the public records fails to comply with the person's request, (3) the requesting person files a mandamus action pursuant to R.C. 149.43 to obtain copies of the records, and (4) the person receives the requested public records only after the mandamus action is filed, thereby rendering the claim for a writ of mandamus moot. Accordingly, we overrule *Toledo Blade, supra*.

{¶ 16} The judgment is reversed and the cause is remanded to the court of appeals with instructions to determine whether Pennington should receive attorney fees.

*Judgment reversed*
*and cause remanded.*

WRIGHT, PFEIFER and COOK, JJ., CONCUR.

DOUGLAS, RESNICK and F.E. SWEENEY, JJ., concur in part and dissent in part.

5

_____

**FRANCIS E. SWEENEY, SR., J., concurring in part and dissenting in part.**

{¶ 17} This court has taken great strides recently in construing the public records law to ensure that records which belong to the people are open to the people without restriction. However, we could not have held as we did if the General Assembly had not provided such clear language in the law. Our job has always been to interpret the law as written. Today, we take one more step forward in this endeavor by overruling *Northwood* and holding that it is not necessary that a judgment actually be entered in the prevailing party's favor before an award of attorney fees may be entered. I wholeheartedly agree with this decision. However, I part ways with the majority for its summary disposition on the issue of whether attorney fees are mandatory. I believe this court should revisit its decision in *State ex rel. Fox v. Cuyahoga Cty. Hosp. Sys.* (1988), 39 Ohio St.3d 108, 529 N.E.2d 443, paragraph two of the syllabus. In so doing, this court should decide that where the award of attorney fees is proper, that they are also mandatory. I believe that this is the correct interpretation of R.C. 149.43 for the following reasons.

{¶ 18} R.C. 149.43(C) provides:

"If a person allegedly is aggrieved by the failure of a governmental unit to promptly prepare a public record and to make it available to the person for inspection in accordance with division (B) of this section, or if a person who has requested a copy of a public record allegedly is aggrieved by the failure of a person responsible for it to make a copy available to the person in accordance with division (B) of this section, *the person allegedly aggrieved may commence a mandamus action to obtain a judgment that orders the governmental unit or the person responsible for the public record to comply with division (B) of this section and that awards reasonable attorney's fees to the person that instituted the mandamus action.* ***" (Emphasis added.)

6

{¶ 19} A simple reading of the statute reveals that R.C. 149.43(C) clearly and unambiguously allows a prevailing party in an action under the Ohio Public Records Act to recover attorney fees.

{¶ 20} However, in reaching its holding that attorney fees were not mandatory in *Fox*, the majority there likened a mandamus action pursuant to R.C. 149.43 to a taxpayer's suit brought pursuant to R.C. 733.61. Then, despite the clear language of the statute, the majority set up a nebulous theory of public benefit and the creation of a fund. Later cases, in reliance on *Fox*, added the elements of lack of reasonableness and bad faith of the custodian. All these factors were to be considered, on a case-by-case basis. See, *e.g., State ex rel. Mazzaro v. Ferguson* (1990), 49 Ohio St.3d 37, 550 N.E.2d 464; *State ex rel. Warren Newspapers, Inc. v. Hutson* (1994), 70 Ohio St.3d 619, 640 N.E.2d 174; *State ex rel. Multimedia, Inc. v. Snowden* (1995), 72 Ohio St.3d 141, 647 N.E. 1374. However, it was unnecessary to develop any of these tests. Again, the law must merely be interpreted as written. Thus, in reviewing the *Fox* decision and its progeny, I think their rationale should be rejected. Instead, I would adopt the position set forth in the dissenting opinion in *Fox* that R.C. 149.43(C) makes the award of attorney fees mandatory.

{¶ 21} In reaching the correct conclusion, the dissent employed well-developed statutory construction principles and public policy considerations. The dissent considered the General Assembly's actions in adding subsection (C) to R.C. 149.43 and repealing R.C. 149.99, which had provided for "a civil action to compel compliance" with R.C. 149.43 and had specified the penalty for a violation of R.C. 149.43. New subsection (C) clearly provides that a "person allegedly aggrieved may commence a mandamus action to obtain a judgment that orders the governmental unit or the person responsible for the public record to comply with division (B) of this section and *that awards reasonable attorney's fees* to the person

that instituted the mandamus action." (Emphasis added.) *Fox,* 39 Ohio St.3d at 113, 529 N.E.2d at 448.

{¶ 22} The dissent also considered and rejected the *Fox* majority's conclusion that the award of attorney fees is discretionary because of the use of the word "may" in the statute. Instead, the dissent found the statutory language unambiguous:

"The word 'may' in this newly revised section does not modify the reasonable-attorney-fees language. The word 'may' only modifies the verbiage 'commence a mandamus action.' It was placed in the statute so there could be no further question that an allegedly aggrieved party could use the speedy remedy of mandamus, a course of action which had been prevented by a majority of this court in *State ex rel. Fostoria Daily Review Co. v. Fostoria Hosp. Assn.* (1987), 32 Ohio St.3d 327, 512 N.E.2d 1176." *Id.*

{¶ 23} The dissenting opinion believed that the *Fox* majority had overlooked the very precise language found in Section 5 of Am.Sub.S.B. No. 275, effective October 15, 1987, 142 Ohio Laws, Part I, 1153, which provided:

"'This act is hereby declared to be an emergency measure necessary for the immediate preservation of the public peace, health, and safety. The reason for the necessity is that, unless the effect of the recent decision of the Ohio Supreme Court in *State ex rel. Fostoria Daily Review Co. v. Fostoria Hosp. Assn.* (1987), 32 Ohio St.3d 323, is immediately superseded and a civil action for a writ of mandamus available in all courts with original jurisdiction reestablished as the remedy to enforce the Public Records Law, *members of the general public could be denied access to public records in violation of the Public Records Law, and have no recourse other than to pursue an inadequate, statutorily prescribed remedy in the court of common pleas of injunctive relief, a forfeiture of $1,000, and a reasonable attorney's fees award. Therefore, this action shall go into immediate effect.'"* (Emphasis *sic*.) *Id.* at 113-114, 529 N.E.2d at 448.

**{¶ 24}** Aside from the statutory history and the clear language of the statute, policy considerations also dictate that this is the just result. As noted by Justice Douglas:

"The theory of any public disclosure law is not that an individual is benefited but that the public as a whole is the beneficiary of the government's business being open to the public. When a 'public office' refuses a legitimate and reasonable request to make available, pursuant to R.C. 149.43, public records, some individual or organization must be the catalyst to enforce the law. If we *** prevent the recovery of reasonable attorney fees for those who seek to enforce the law on behalf of all of us, then truly those self-appointed surrogates will be 'volunteers' in every sense of the word and will find themselves burdened with heavy expenses which they must personally underwrite. There will be little incentive, except possibly for news-gathering organizations, to seek enforcement of the law which, in effect, defeats the very purpose of the law." *Id.* at 112-113, 529 N.E.2d at 447.

**{¶ 25}** By making the award of attorney fees discretionary, "the majority leaves an offending governmental unit with no reason to comply with the Act. Any such unit will be defended at the taxpayers' expense since its attorney fees will be paid out of government funds. If the 'public office' loses and is not required to pay costs and reasonable attorney fees, then no penalty at all attaches since the General Assembly has repealed R.C. 149.99." *Id.* at 114, 529 N.E.2d at 448.

**{¶ 26}** I agree with all the concerns raised by the *Fox* dissenting opinion. Further, I recognize that one of the biggest obstacles facing the public in its requests for public records is that governmental agencies often refuse to turn over public records that should be produced. These governmental agencies take the position that the records belong to them, and not the public. Indeed, this is what happened here. Deputy Clerk Cloud testified at her deposition that she was not aware that Carroll was entitled to these records; instead, she thought she would be providing them to him "as a courtesy." Cloud went so far as to testify to this view of the

lawsuit: "I thought it was a bunch of bull crap that I basically had done my job, that I just thought it was a legal technicality that's wasting a lot of everyone's time. It really is unnecessary because I haven't done anything wrong." Such an attitude or ignorance cannot be condoned. In her position as a deputy clerk, she acts as a custodian of our records, and she is charged with knowledge of the law. If such ignorance results from inadequate training by a supervisor, that too cannot be condoned. Our government is its people and should be about serving them and not about serving itself.

{¶ 27} For today's holding I would provide a "bright line" test. If a person is refused public records that he has a right to obtain, that person has a statutory right to bring a mandamus action to enforce compliance. The act of filing the mandamus action is sufficient to entitle the person to the mandatory award of attorney fees set forth in the statute.

{¶ 28} Because I do not believe that *Northwood* and *Fox* are in accord with the law of our state, as set forth in clear and unambiguous terms in R.C. 149.43(C), I would overrule *Northwood* in its entirety and the second paragraph of the syllabus in *Fox.* Accordingly, I would reverse the court of appeals and remand the cause for the allowance of reasonable attorney fees, including fees attributable to this appeal and to proceedings on remand.

DOUGLAS and RESNICK, JJ., concur in the foregoing dissenting opinion.

_____