The STATE of Ohio, Appellee,

v.

BOWEN, Appellant.*

[Cite as *State v. Bowen* (2000), 139 Ohio App.3d 41.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–990878.

Decided July 28, 2000.

Painter, J., concurred separately with opinion.

* We have *sua sponte* removed this case from the accelerated calendar.

42

*Michael K. Allen,* Hamilton County Prosecuting Attorney, and *Paula E. Adams,* Assistant Prosecuting Attorney, for appellee.

*Dinsmore & Shohl, L.L.P.,* and *Matthew V. Brammer,* for appellant.

WINKLER, Judge.

On January 3, 1996, defendant-appellant, Terrence S. Bowen, was found not guilty by reason of insanity on two counts of attempted child stealing. Based upon medical evaluations and other evidence presented to the trial court, Bowen was found to be a mentally ill person subject to hospitalization by court order. The least-restrictive-commitment alternative was determined to be a commitment to the Pauline Warfield Lewis Center.

In May 1996, Bowen's treating physician and case workers submitted reports to the trial court recommending a modification of Bowen's commitment to conditional release. Bowen's request was denied. However, in August 1996, Bowen again requested conditional release, which the trial court granted.

In October 1997, the trial court, in accordance with statute, held a hearing regarding Bowen's continued commitment. The trial court determined that Bowen was still mentally ill and subject to hospitalization by court order, and that the least-restrictive-commitment alternative was to continue Bowen in his conditional-release status.

In October 1999, Bowen's case once again came before the trial court for review. Although the treating physician's report, prepared by Dr. Tracey Skale, was neutral regarding termination of Bowen's commitment, Bowen, at the hearing, made an oral motion for termination of his commitment. The state, which was entitled by statute to have its own doctor evaluate Bowen prior to any termination or change in conditions, moved for a continuance to allow time for that evaluation. Additionally, Bowen moved for an additional medical evaluation to be conducted by a Dr. Edward Hackett, which the trial court granted.

Bowen was evaluated by Dr. Nancy Schmidtgoessling from the local forensic center. Although Bowen did not submit an evaluation of his own from Dr. Hackett, there was an evaluation submitted to the court by a Dr. Glenn Weaver. Although the record is not clear on whose behalf Weaver submitted the evaluation, Bowen's counsel informed this court during oral argument that Weaver had been substituted for Hackett.

The trial court held a hearing on Bowen's motion for termination of commitment on November 19, 1999. At that hearing, both the state and Bowen stipulated to the submission of the evaluation prepared by Schmidtgoessling; however, Bowen refused to stipulate to the evaluation prepared by Weaver. Over Bowen's objection, the trial court admitted into evidence Dr. Weaver's evaluation of Bowen. Based upon the mental evaluations submitted by Skale, Schmidtgoessling, and Weaver, the trial court denied Bowen's request for termination of commitment and continued Bowen on conditional release.

In his appeal from the trial court's decision, Bowen claims in his first assignment of error that the court erred in allowing into evidence the evaluation prepared by Weaver. In his second assignment of error, Bowen further claims that the court erred in overruling his motion to terminate commitment, because the state had failed to carry its burden to show that Bowen remained mentally ill and subject to hospitalization by court order.

With respect to the submission of Weaver's report, the issue turns on the language of R.C. 2945.401(D)(1)(c), which allows the state to "introduce the evaluation report or present other evidence at the hearing in accordance with the Rules of Evidence." *Id.*

In interpreting a statute, we must give effect to the legislative intent reflected in its language. See *State ex rel. Pennington v. Gundler* (1996), 75 Ohio St.3d 171, 173, 661 N.E.2d 1049, 1051; *State v. Patterson* (1998), 128 Ohio App.3d 174, 714 N.E.2d 409:

"Words and phrases shall be read in context and construed according to the rules of grammar and common usage. Words and phrases that have acquired a technical or particular meaning, whether by legislative definition or otherwise, shall be construed accordingly." R.C. 1.42.

The Supreme Court of Ohio has held that the word "or" indicates "an alternative between different or unlike things." *Pizza v. Sunset Fireworks Co., Inc.* (1986), 25 Ohio St.3d 1, 4–5, 25 OBR 1, 4, 494 N.E.2d 1115, 1118. It appears from the language of R.C. 2945.401(D)(1)(c) that the evaluation report is to be considered separately from all other evidence, because the word "or" separates it from other evidence presented by the state.

Additionally, modifying words or phrases "only apply to the words or phrases immediately preceding or subsequent to the word, and will not modify the other words, phrases or clauses more remote, unless the intent of the legislature clearly require[s] such an extension." *In re Shaffer* (N.D.Ohio 1998), 228 B.R. 892, 894. Consequently, the statutory phrase "or present other evidence at the hearing in accordance with the rules of evidence" does not pertain to the evaluation report. Based upon the purpose of this code section, which is to provide a mental evaluation for the court's review, and the foregoing rules of statutory construction, we interpret R.C. 2945.401(D)(1)(c) to allow the state to introduce an evaluation report at a termination-of-commitment hearing as a matter of law, while only requiring compliance with the evidentiary rules for any other matter it may seek to introduce into evidence.

Our interpretation of this provision is further supported by the fact that all other psychiatric reports relied upon by the trial court in evaluating a

defendant's mental capacity must be submitted directly to the trial court. See R.C. 2945.401(C) and 2945.401(D)(1)(b); see, also, R.C. 2945.40(D) and 2945.371(G). In cases where competence is at issue, either party can submit evaluations to the court at the competency hearing without stipulations and over the objections of the opposing party. See R.C. 2945.37(E). Also, when reviewing the factors relevant to a termination-of-commitment decision, the court is not limited by the factors enumerated in the statute, but may consider any other matter brought to the court's attention. See R.C. 2945.401(E). Thus, because any evaluation of a defendant's mental state is a factor relevant to the court's decision regarding termination of commitment, the court may, and should for public-safety purposes, consider any mental evaluation brought to the court's attention.

Because we hold that mental evaluations may be accepted by the court when it considers the possible termination of an insanity acquittee's commitment, the trial court did not err in this case when it allowed the state to submit Weaver's evaluation into evidence and considered that evaluation in making its determination of Bowen's mental status. We, therefore, overrule Bowen's first assignment of error.

In the second assignment of error, Bowen claims that the trial court erred when it denied his motion to terminate his commitment. We disagree.

In order to retain jurisdiction over a defendant found not guilty by reason of insanity, the trial court must continue to find, at periodic hearings, that there is clear and convincing evidence that the defendant remains a mentally ill person subject to hospitalization by court order. See R.C. 2945.401(G)(1); see, also, *State v. Hubbard* (Nov. 5, 1999), Trumbull App. No. 97–T–0144, unreported, 1999 WL 1080755. "Clear and convincing evidence is that which will produce in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established." *State v. Kinman* (1996), 109 Ohio App.3d 95, 99, 671 N.E.2d 1083, 1086, citing *In re Adoption of Holcomb* (1985), 18 Ohio St.3d 361, 18 OBR 419, 481 N.E.2d 613. Although R.C. 5122.01(B) defines "[a] [m]entally ill person subject to hospitalization by court order," see R.C. 2945.37(A)(8), the court must review the factors set forth in R.C. 2945.401(E). We, therefore, review the record to determine if those factors, or any additional factors, were properly considered by the trial court in its decision not to terminate Bowen's commitment.

Skale's evaluation indicated that Bowen had a schizoaffective disorder and an alcohol-abuse history, both of which were in full remission. The evaluation also indicated that although Bowen showed no risks factors, he would have to take psychotropic medications indefinitely. If Bowen failed to take his medications (at the time, they included Depakote, Doxepin, and Haldol), he would be

at risk of rapid "decompensation." It was further noted that Bowen himself "believ[ed] that he need[ed] ongoing treatment."

The medical evaluation prepared by the local forensic center's clinical psychologist, Dr. Nancy Schmidtgoessling, indicated that Bowen was experiencing a number of major stresses in his life. Bowen informed Schmidtgoessling that, when he knew that he needed to make money, he would skip his nighttime medication. Bowen stated that he did this so that he would not feel tired the following day, which would then allow him to get a temporary job for the day. Bowen also stated that his father had recently passed away, but that this did not bother him because "people [we]re born to die." He went on to inform Schmidtgoessling that he was separated from his wife, because they always argued, and that he was living in temporary housing. Bowen also indicated that he had a "number of ideas about 'self-employment'"; however, in Schmidtgoessling's opinion, those ideas were not realistic. Schmidtgoessling's evaluation concluded that Bowen had a history of rapid decompensation and that his commitment should not be terminated without first relaxing some of its restrictions. Then, the issue of terminating the commitment could be revisited at a later date on the basis of whether Bowen had complied with the relaxed restrictions.

In contrast to Schmidtgoessling, Weaver reported in his evaluation that, upon discussing his father's recent death, Bowen became tearful and readily acknowledged the great loss of a key supportive figure. Weaver also conducted psychological testing on Bowen. Based upon these tests and his independent evaluation, Weaver concluded that Bowen "continues to show some suggestion of cognitive slippage and distractibility. He tends to practice denial and attempts to present a front of 'I'm fine.'" Additionally, Weaver concluded that Bowen was not ready to control his own treatment, and that Bowen was in danger of becoming "noncompliant with treatment and requir[ing] hospitalization" if commitment were terminated.

Based upon the foregoing reports, we hold that the evidence clearly and convincingly supported the trial court's decision to deny Bowen's request for termination of his commitment. Therefore, we overrule Bowen's second assignment of error and affirm the trial court's judgment.

*Judgment affirmed.*

DOAN, P.J., concurs.

PAINTER, J., concurs separately.

PAINTER, J., concurring.

While I have no quarrel with the majority's rule of construction—sometimes referred to as "the last antecedent doctrine"—as good advice for careful writers, I am hesitant to apply it as a gauge of legislative intent, especially considering that neither side has adopted the majority's reading of the statute.

From reading the sentence "The prosecutor may introduce the evaluation report or present other evidence at the hearing in accordance with the Rules of Evidence," I am not sure what the legislature meant. A comma between "report" and "or" would have made clear that the legislature meant what the majority gleans. A comma between "hearing" and "in" would have made plain the opposite meaning. Unfortunately, the legislature did not see fit to supply punctuation. The sentence is an example of the poor writing endemic in what the legislature has the gall to call the *Revised* Code.

Almost all of the code is badly drafted, and much is nigh indecipherable. A *random example follows—many more could be included:*

"Subject to division (B)(4) of this section, if, within six years of the offense, the offender has been convicted of or pleaded guilty to one violation of division (A) or (B) of section 4511.19 of the Revised Code, a municipal ordinance relating to operating a vehicle while under the influence of alcohol, a drug of abuse, or alcohol and a drug of abuse, a municipal ordinance relating to operating a motor vehicle with a prohibited concentration of alcohol in the blood, breath, or urine, section 2903.04 of the Revised Code in a case in which the offender was subject to the sanctions described in division (D) of that section, section 2903.06 or 2903.08 of the Revised Code, former section 2903.07 of the Revised Code, or a municipal ordinance that is substantially similar to former section 2903.07 of the Revised Code in a case in which the jury or judge found that the offender was under the influence of alcohol, a drug of abuse, or alcohol and a drug of abuse, or a statute of the United States or of any other state or a municipal ordinance of a municipal corporation located in any other state that is substantially similar to division (A) or (B) of section 4511.19 of the Revised Code, the judge shall suspend the offender's driver's or commercial driver's license or permit or nonresident operating privilege for not less than one year nor more than five years."[1]

I count fifteen times that the word "or" is used in *one sentence.* Perhaps it is a world record, but if it is not, it is probably only eclipsed by another section of the legislature's handiwork. I have not the inclination, or the patience, to look. Applying the last antecedent doctrine to the above 239-word sentence would wreak havoc. It might also be difficult to find a "state that is substantially

---

1.  R.C. 4507.16(B)(2).

similar to division (A) or (B) of section 4511.19." Of course, a sentence with 239 words is unreadable in any event.

Considering the above passage, I hesitate to ascribe to the legislature any knowledge of grammar or clear writing, much less knowledge of the last antecedent doctrine. But if the majority is saying that we should apply rules of correct writing to the legislature's output, I fear what the rules might do to the next passage we are called upon to interpret.

Interestingly enough, neither side in this case has even mentioned the last antecedent doctrine. Both sides have assumed that the statute means the opposite of what the majority says today. Well-educated, highly trained, and very experienced appellate lawyers have read the passage and interpreted it differently. And one side had an *incentive* to read it the majority's way—even the lawyers who win when it is read that way have not asked us to read it so.

I write separately to illustrate that too often the legislature leaves us with an almost impossible task of attempting to read the bones it scatters. Neither the courts, nor the parties, nor the public should have to guess at the meaning of legislation. We should not have to resort to arcane rules of statutory construction, which, after all, only come into play when the law is *ambiguous*.

Why must the legislature write ambiguous laws? The phrase in question here is only twenty-one words—a model of brevity, especially when contrasted with the more common 239–word opus quoted earlier. Surely, the legislature could have written it so the meaning is plain. It is not difficult. But it is their job.