**4522 KENNY ROAD, L.L.C., d.b.a. Kahoots, Appellant,**

v.

**CITY OF COLUMBUS BOARD OF ZONING ADJUSTMENT, Appellee.**

[Cite as *4522 Kenny Rd., L.L.C. v. Columbus Bd. of Zoning Adjustment,* 152 Ohio App.3d 526, 2003-Ohio-1891.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 02AP–631.

Decided April 15, 2003.

Smith & Hale and Harrison W. Smith Jr., for appellant.

Richard C. Pfeiffer Jr., City Attorney, and Keith S. Mesirow, Assistant City Attorney, for appellee.

---

BOWMAN, Judge.

{¶ 1} Appellant, 4522 Kenny Road, L.L.C., d.b.a. Kahoots, appeals from a judgment of the Franklin County Court of Common Pleas affirming the decision of appellee, Columbus Board of Zoning Adjustment ("BZA"), finding appellant in violation of the city's zoning code. For the reasons that follow, we reverse that judgment.

{¶ 2} Appellant operates "Kahoots" at 4522 Kenny Road in Columbus, Ohio. That business is in a Commercial Planned Development District ("CPDD"), which prohibits, among other things, the operation of an "adults only entertainment establishment." An "adults only entertainment establishment" was defined in former Columbus City Code ("C.C.") 3303.01 as "an establishment which features totally nude, topless, bottomless, strippers, male or female impersonators, or similar entertainment or services which are obscene or harmful to juveniles as defined by Ohio Revised Code Section 2907.01(E) and (F) and Columbus City Codes Section 2307.01(E) and (F)." C.C. 3303.01 has recently been amended, although the amendment is not relevant to the present matter. "Bottomless" is defined in the code to mean "less than a full opaque covering of male or female genitals, pubic area or buttocks." Id. at C.C. 3303.02. "Topless" is defined to mean "less than a full opaque covering below the top of the nipple." Id. at C.C. 3303.20.

{¶ 3} Mike Farrenkopf, an investigator for the Columbus Building and Development Code Enforcement Section, visited Kahoots twice in June 1999. In his first visit to Kahoots, Farrenkopf sat in a large dining room with booths on either side. In the middle of the room, he witnessed several female dancers wearing bikinis or thong-type bikini bottoms. He described the bikinis as having very little back covering so as to expose the dancers' buttocks. He also testified that he witnessed dancers performing topless. He witnessed several of the dancers going into another room north of the main dining room ("the Safari Room"), in which the dancers removed their bikini tops and danced for a patron. Farrenkopf later witnessed a parade of dancers coming out of the Safari Room and into the main dining room. During that parade, several dancers' jackets opened up thereby exposing their breasts or nipples. In his second visit to Kahoots, Farrenkopf was taken to another room, the Champagne Room, where patrons could watch topless dancing for an extended period of time.

{¶ 4} As a result of these visits, appellant was served with a Zoning Code Violation Order, alleging that Kahoots was operating an adult entertainment establishment in violation of the CPDD. At a hearing before the BZA, appellant argued that, pursuant to the former C.C. 3303.01, there must be a determination that any topless or bottomless dancing was "obscene or harmful to juveniles" for Kahoots to be classified as an adults-only entertainment establishment. In contrast, the city of Columbus ("the city") contended that Kahoots was an adults-only entertainment establishment because it featured topless or bottomless dancing. The city argued that the phrase "obscene or harmful to juveniles" contained in former C.C. 3303.01 modified only the words "similar entertainment or services" and did not modify the words "topless" or "bottomless." A majority of the BZA determined that appellant was operating an adults-only entertainment

establishment and, accordingly, was in violation of the CPDD. No evidence was presented to establish that the conduct at issue was obscene or harmful to juveniles, and the BZA made no such determination.

{¶ 5} Appellant appealed that decision to the Franklin County Court of Common Pleas, which affirmed the BZA's decision. The lower court determined that the definition of an adults-only entertainment establishment contained in former C.C. 3303.01 was not ambiguous. The court further concluded that proof of topless or bottomless dancing was sufficient to meet the definition of an adults-only entertainment establishment, and the city did not need to prove that the dancing was obscene or harmful to juveniles to establish a violation.

{¶ 6} Appellant now appeals, assigning the following error:

{¶ 7} "The common pleas court erred in sustaining the decision of the city of Columbus Board of Zoning Appeals interpreting the Columbus City Code in a way that justified the conclusion that on the two dates in question the activity observed in appellant's place of business constituted 'adult entertainment' as defined in said code."

{¶ 8} Initially, we note that appellant's appeal is from a decision of the BZA that is governed by R.C. Chapter 2506. The standard of review in such a case has been set forth by the Ohio Supreme Court as follows:

{¶ 9} "* * * In an R.C. Chapter 2506 administrative appeal of a decision of the board of zoning appeals to the common pleas court, the court, pursuant to R.C. 2506.04, may reverse the board if it finds that the board's decision is not supported by a preponderance of reliable, probative and substantial evidence. An appeal to the court of appeals, pursuant to R.C. 2506.04, is more limited in scope and requires that court to affirm the common pleas court, unless the court of appeals finds, as a matter of law, that the decision of the common pleas court is not supported by a preponderance of reliable, probative and substantial evidence." *Kisil v. Sandusky* (1984), 12 Ohio St.3d 30, 34, 12 OBR 26, 465 N.E.2d 848. See, also, *Elbert v. Bexley Planning Comm.* (1995), 108 Ohio App.3d 59, 66, 670 N.E.2d 245.

{¶ 10} Appellant contends in its sole assignment of error that, in order to satisfy the definition of adults-only entertainment establishment, there must be a showing that the establishment featured conduct of the type listed in the code provision and a showing that such conduct was obscene or harmful to juveniles. Because the city presented no proof that the topless or bottomless dancing at issue was obscene or harmful to juveniles, and because the BZA made no such determination, appellant argues that it was error to find Kahoots an adults-only entertainment establishment under former C.C. 3303.01. Appellant does not challenge the constitutionality of this code section.

{¶ 11} The city argues that the phrase "obscene or harmful to juveniles" modifies only the last category of conduct identified in the code provision—"similar entertainment or services"; therefore, the BZA was not required to find that the topless and bottomless conduct at issue here was obscene or harmful to juveniles. According to the city, it is irrelevant that the words "nude," "topless" and "bottomless," as they appear in C.C. 3303.01, are adjectives that do not appear to modify a particular noun. The city reasons that, because the dancers in question performed in a manner fitting the code's definition of "topless" and "bottomless," the entertainment in question constituted "adults only entertainment."

{¶ 12} The validity of appellant's argument turns on the interpretation of former C.C. 3303.01, which defines "adults only entertainment establishment." Because zoning regulations constitute derogation of a person's property rights, they should be given a fair and reasonable construction with due regard for the conflicting interests involved. *State ex rel. Scadden v. Willhite* (Mar. 26, 2002), Franklin App. No. 01AP–800, 2002 WL 452472. A court should give the words in a zoning regulation the meaning commonly attributed to them unless a contrary intention appears in the regulation. *Akwen, Ltd. v. Ravenna Zoning Bd. of Appeals* (Mar. 29, 2002), Portage App. No. 2001–P–0029, 2002 WL 480041. The meaning of the relevant provisions of the code must be derived from the "context of the entire ordinance." *Scadden*, supra, citing *In re Univ. Circle, Inc.* (1978), 56 Ohio St.2d 180, 184, 10 O.O.3d 346, 383 N.E.2d 139. Nevertheless, where there is ambiguity, courts must strictly construe restrictions on the use of real property in favor of the property owner. *Saunders v. Clark Cty. Zoning Dept.* (1981), 66 Ohio St.2d 259, 261, 20 O.O.3d 244, 421 N.E.2d 152; *Mishr v. Poland Bd. of Zoning Appeals* (1996), 76 Ohio St.3d 238, 241, 667 N.E.2d 365; *BP Oil Co. v. Dayton Bd. of Zoning Appeals* (1996), 109 Ohio App.3d 423, 432, 672 N.E.2d 256; *Liberty Sav. Bank v. Kettering* (1995), 101 Ohio App.3d 446, 451, 655 N.E.2d 1322. This is because such restrictions are in derogation of the common law and deprive a property owner of certain uses of his land to which he would otherwise be lawfully entitled. *Saunders*, supra, 66 Ohio St.3d at 261, 20 O.O.3d 244, 421 N.E.2d 152.

{¶ 13} When an ordinance is unambiguous and conveys a clear meaning, a court must only read and follow the words of the ordinance. See *Fairborn v. DeDomenico* (1996), 114 Ohio App.3d 590, 593, 683 N.E.2d 820; *State v. Waddell* (1995), 71 Ohio St.3d 630, 631, 646 N.E.2d 821. In such a case, there is no need to apply the rules of construction. *Cline v. Ohio Bur. of Motor Vehicles* (1991), 61 Ohio St.3d 93, 96, 573 N.E.2d 77; *BP Oil Co.*, supra. An ordinance is ambiguous when it is subject to various interpretations. Id. Specifically, an ambiguity exists if a reasonable person can find different meanings in the

ordinance and if good arguments can be made for either of two contrary positions. Id.

{¶ 14} Appellant contends that the phrase "obscene or harmful to juveniles" modifies all that precedes it, both the catchall category of "similar entertainment or services" and the words "totally nude, topless, bottomless, strippers, male or female impersonators." Appellant points out that other adult-themed prohibitions in the CPDD, such as adult bookstores and adult motion picture theaters, require a showing that the majority of the establishment's income be derived from adult material which is obscene or harmful to juveniles. Therefore, appellant argues that the subject code provision should also be read to require a showing of obscenity or harm to juveniles to prove an adults-only entertainment establishment. Furthermore, appellant contends that the phrase "obscene or harmful to juveniles" must apply to all of the conduct listed in the subject code provision because it would be illogical to classify all male or female impersonators as adults-only entertainment regardless of the type of impersonation.

{¶ 15} R.C. 1.47 provides:

{¶ 16} "In enacting a statute, it is presumed that:

{¶ 17} "(A) Compliance with the constitutions of the state and of the United States is intended;

{¶ 18} "(B) The entire statute is intended to be effective;

{¶ 19} "(C) A just and reasonable result is intended[.]"

{¶ 20} In determining a fair and reasonable construction of the definition of an "adults only entertainment establishment," we must look at that definition in the context of the other provisions relating to adult-themed businesses. *Scadden.* Also prohibited in the CPDD are adult bookstores and adult motion picture theaters. The definitions of both of these adult businesses require a showing that they derive a majority of their income from materials which are obscene or harmful to juveniles before they are to be considered adult for purposes of the code. It is reasonable to interpret the definition of an "adults only entertainment establishment" to require the entertainment to be obscene or harmful to juveniles when the other adult-themed prohibitions in the code require the same showing.

{¶ 21} Moreover, the city's preferred interpretation of the code section would result in the absurd conclusion that male or female impersonators are per se "adults only entertainment." There is nothing per se "adult" about a male or female impersonator. Such an interpretation would include many forms of entertainment normally not associated with "adult entertainment," such as the film "Some Like it Hot," in which Tony Curtis and Jack Lemmon dress as women, or "Tootsie," featuring Dustin Hoffman posing as a woman, or the musical "Hairspray," in which Harvey Fierstein plays a woman, or "Victor/Victo-

ria," in which the lead character is a woman posing as a man performing as a woman.

{¶ 22} Further, we must note that the city's interpretation not only flies in the face of grammatical rules but also ignores common sense. At one point the city's brief states: "In the context of the Columbus City Code, it makes perfect sense to say that one went to an adults only entertainment establishment yesterday and saw bottomless." The city's reading of the code section produces the circular conclusion that, because the dancing was adults-only entertainment, the establishment was an adults-only entertainment establishment. Yet the crux of this appeal—the question the court is being asked to decide—is what constitutes "adults only entertainment" and whether the code section gives adequate notice to all would-be purveyors of such entertainment. The city's reading of the code does not assist this court in answering that question but merely proposes a "you'll know a violation when you see one" standard of proof. We are left with many unanswered questions: Are both topless men and women prohibited? Is it only nude, topless, or bottomless *dancing* which is proscribed, or is the exposure itself the problem? Should the word "entertainment" in the latter part of the sentence have been inserted behind each of these adjectives? If nudity is not intended to be entertainment, would it be protected? The only reasonable interpretation of the code that would resolve this ambiguity is to read the phrase "obscene or harmful to juveniles" as applying to all of the preceding portions of the code section.

{¶ 23} Finally, the city's interpretation of an "adults only entertainment establishment" would require application of a more stringent standard of proof only where the catchall category of "similar entertainment or services" is implicated. It is not reasonable to require a showing that a form of entertainment is obscene or harmful to juveniles in every adult-themed prohibition in the CPDD except for "totally nude, topless, bottomless, strippers," or "male or female impersonators." The more reasonable interpretation would require topless or bottomless dancing to be obscene or harmful to juveniles in order to be categorized as "adults only entertainment."

{¶ 24} Strictly construing the "adults only entertainment establishment" definition in favor of the landowner, we find that the BZA and the lower court erred as a matter of law in finding that Kahoots was an "adults only entertainment establishment" as that term is defined in the former Columbus City Code. A fair and reasonable construction of that definition requires that the phrase "obscene or harmful to juveniles" modify all that comes before it and not simply the preceding phrase "similar entertainment or services." Therefore, a showing that the activity at Kahoots was obscene or harmful to juveniles must be made before Kahoots can be considered an "adults only entertainment establishment." There

was no such finding made by the BZA or the lower court. Appellant's sole assignment of error is sustained. The judgment of the Franklin County Court of Common Pleas is reversed, and this matter is remanded to the BZA to determine whether the activities in Kahoots were obscene or harmful to juveniles so as to render Kahoots an "adults only entertainment establishment."

Judgment reversed<br>and cause remanded.

McCormac, J., concurs.

Klatt, J., dissents.

John W. McCormac, J., retired, of the Tenth Appellate District, was assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.

Klatt, Judge, dissenting.

{¶ 25} I respectfully dissent, as I believe that C.C. 3303.01 is not ambiguous with respect to whether there must be a showing of obscenity or harm to juveniles to satisfy the definition of an adults-only entertainment establishment. Words and phrases shall be read in context and construed according to the rules of grammar and common usage. R.C. 1.42. Normally, modifying words or phrases " 'only apply to the words or phrases immediately preceding or subsequent to the word, and will not modify the other words, phrases, or clauses more remote, unless the intent of the legislature clearly require[s] such an extension.' " *State v. Bowen* (2000), 139 Ohio App.3d 41, 44, 742 N.E.2d 1166, citing *In re Shaffer* (N.D.Ohio 1998), 228 B.R. 892, 894. Applying this general rule of construction to the code section at issue, the phrase "obscene or harmful to juveniles" modifies only the category of conduct which immediately precedes it, "similar entertainment or services."

{¶ 26} Moreover, it should be noted that there is no comma or other connecting words between the catchall category "similar entertainment or services" and the subsequent modifying phrase "which are obscene or harmful to juveniles." The use of a comma or a connecting word, such as "and," between these phrases would have indicated an intent to modify more than just the immediately preceding catchall category. *Edward H. Everett Co. v. Jadoil, Inc.* (Jan. 26, 1987), Licking App. No. CA–3211, 1987 WL 5766. Because these devices were not used, it is apparent that the modifying phrase "which are obscene or harmful to juveniles" was intended to modify only the preceding phrase "similar entertainment or services" and not the more remote language contained in that code provision. *Bowen,* supra; see, also, *In re Bush* (S.D.Ohio 2000), 253 B.R. 863, 865. This court must give effect to the legislative intent reflected in the language

used. *State ex rel. Pennington v. Gundler* (1996), 75 Ohio St.3d 171, 173, 661 N.E.2d 1049.

{¶ 27} Additionally, the Supreme Court of Ohio has held that the word "or" indicates an alternative between different or unlike things. *Pizza v. Sunset Fireworks Co., Inc.* (1986), 25 Ohio St.3d 1, 4–5, 25 OBR 1, 494 N.E.2d 1115. These alternatives must be treated completely separate from one another. *Shaffer,* supra. In C.C. 3303.01, the catchall category "similar entertainment or services" is separated from the preceding list of conduct by the word "or." Therefore, it appears that the "similar entertainment or services" catchall category was intended to be distinct from the other conduct in that provision. *Bowen,* supra; *Shaffer,* supra. This lends further support to the city's contention that the drafters of this definition intended the phrase "obscene or harmful to juveniles" to modify only the catchall category.

{¶ 28} This interpretation is also consistent with common sense. It is hard to imagine any form of topless or bottomless dancing that would not be considered adults-only entertainment. However, because of the broad nature of the phrase "similar entertainment or services," it is not surprising that the city sought to limit that catchall category to entertainment or services "which are obscene or harmful to juveniles." This limitation is not necessary for topless or bottomless entertainment that, by its very nature, is adults-only. The fact that the city also defined adults-only entertainment to include "male or female impersonators" does not demonstrate a different legislative intent, although the wisdom of including that category of entertainment with "nude, topless, bottomless, strippers" might well be questioned.

{¶ 29} Because I find that C.C. 3303.01 is unambiguous and conveys a clear and definite meaning, I would give effect to the language used. *Meeks v. Papadopulos* (1980), 62 Ohio St.2d 187, 190, 16 O.O.3d 212, 404 N.E.2d 159; *BP Oil Co.,* supra. C.C. 3303.01 defines topless or bottomless entertainment as adults-only entertainment and does not require a showing of obscenity or harm to juveniles. This is the interpretation of C.C. 3303.01 utilized by the BZA and the trial court. I therefore would find no error in the trial court's affirmance of the BZA's decision.