[Cite as *State v. Kirkendall*, 2025-Ohio-2497.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-240438 |
| | | TRIAL NO. C/24/CRB/3579/A |
| Plaintiff-Appellee, | : | |
| vs. | : | |
| | | *JUDGMENT ENTRY* |
| KENNETH KIRKENDALL, | : | |
| Defendant-Appellant. | : | |

This cause was heard upon the appeal, the record, and the briefs.

The judgment of the trial court is vacated and the cause is remanded for the reasons set forth in the Opinion filed this date.

Further, the court holds that there were reasonable grounds for this appeal, allows no penalty, and orders that costs are taxed to the appellee.

The court further orders that 1) a copy of this Judgment with a copy of the Opinion attached constitutes the mandate, and 2) the mandate be sent to the trial court for execution under App.R. 27.

**To the clerk:**

**Enter upon the journal of the court on 7/16/2025 per order of the court.**

**By:**_____
    **Administrative Judge**

[Cite as *State v. Kirkendall*, 2025-Ohio-2497.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO


| | | | |
|---|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. | C-240438 |
| | | TRIAL NO. | C/24/CRB/3579/A |
| Plaintiff-Appellee, | : | | |
| vs. | : | | |
| | | *O P I N I O N* | |
| KENNETH KIRKENDALL, | : | | |
| Defendant-Appellant. | : | | |


Criminal Appeal From: Hamilton Municipal Court

Judgment Appealed From Is: Vacated and Cause Remanded

Date of Judgment Entry on Appeal: July 16, 2025


*Connie M. Pillich*, Hamilton County Prosecuting Attorney, and *Norbert Wessels,* Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Raymond T. Faller*, Hamilton County Public Defender, and *Lora Peters*, Assistant Public Defender, for Defendant-Appellant.

**BOCK, Judge.**

**{¶1}** In this appeal, defendant-appellant Kenneth Kirkendall challenges the sentencing court's imposition of house arrest consisting of "24/7 lockdown" with a sole exception for treatment, for five years, as a condition of community control. We hold that the sentencing court exceeded its authority under R.C. 2929.25(A)(1) because house arrest, as defined by statute, includes an exception for employment.

**{¶2}** We sustain the sole assignment of error, vacate the sentence, and remand the cause for resentencing.

## I.    *Factual and Procedural History*

**{¶3}** Kirkendall pleaded guilty to misdemeanor aggravated menacing in violation of R.C. 2903.21(A). The State recommended no jail time.

**{¶4}** At the sentencing hearing, Kirkendall's attorney explained that Kirkendall was fired from his job at Walmart, "his first full-time employment," and broadcast himself on Facebook Live. Apparently, the broadcast made it to the news. The broadcast is not in the record, but Kirkendall's "specific words" were, according to the sentencing court, "I'm ready to go crazy. I'm popping those asses. About to go to Walmart, Kill all those asses. Gonna kill me one of these white motherfuckers today." Kirkendall then lifted his jacket and "placed a hand on what appeared to be a gun." The State and Kirkendall agreed that it was a toy gun. Kirkendall explained that he was "really intoxicated." After seeing it on the news, Kirkendall turned himself in roughly two days later. Walmart hired extra security.

**{¶5}** At the time of the sentencing hearing, Kirkendall was "accepted to get enrolled in substance abuse and mental health services." Kirkendall apologized for the incident and explained that he "really loved working" that job and "was overwhelmed"

by his firing. He "never intended on it getting this big." Later, he conceded that his actions were inconsistent with "the actions of a mature man."

**{¶6}** Kirkendall's criminal history included a juvenile delinquency adjudication for burglary, a 2013 burglary conviction, and more recently a possession-of-marijuana conviction and parole violation.

**{¶7}** The sentencing court characterized Kirkendall's actions as immature and warned Kirkendall that, even if the gun was fake, "anyone shooting you would have been perfectly justified if they watched your Facebook Live video."

**{¶8}** The sentencing court imposed a suspended 180-day jail sentence with five years of community control consisting of "24/7 lockdown with hours out only for treatment -- for verified treatment." It was "intensive supervision." Kirkendall was prohibited from having "firearms" and "toy firearms," entering Walmart, and consuming alcohol. He was also placed on electronic monitoring. The sentencing court remarked, "I could only give you 180 days in jail, but I'm giving you five years on a box with no weapons. To me that's actually a harsher sentence than 180 days in jail."

**{¶9}** The judge's sheet lists Kirkendall's "prior history," which includes "2013 Bellevue Ky Burglary Dept → 14 mos. Out 2016," and "2017 Newport PV – no dispo – extradited." It includes his sentence of "24/7 lockdown w hrs [indiscernible] out only for verified treat," "no alcohol – random urine for entire term," and "ICU – obey all rules. treat as need. Please connect Δ ASAP to treat for diagnosis – 24/7 lockdown concerns. no firearms + no toy firearms + frequent weapons checks. 24/7 lockdown except for treat (EMU.) stay out of Walmart."

**{¶10}** Kirkendall appealed his sentence in September 2024.

**{¶11}** In December 2024, the State filed a "Motion to Vacate Entry as Void and/or Clarify the Record" in this appeal, arguing that the trial court mitigated

4

Kirkendall's sentence in October 2024, one month after Kirkendall filed his appeal. The trial court's judge's sheet attached to the State's motion shows that the trial court granted Kirkendall's pro se motion to modify his probation on October 30, 2024, and ordered, "Δ may move ltd hours out on EMU to go to school (upon pre-verification) + ltd hrs for job seeking + a verified Job. All other original conditions remain (Decision based on): 1) connected to 6CB 2) all negative urine 3) no EMU violations 4) no guns."

**{¶12}** The State asked this Court to vacate that entry as void. We declined the State's invitation, as this Court lacked jurisdiction to consider the trial court's order because it was entered after Kirkendall filed his notice of appeal.

## II. Analysis

**{¶13}** On appeal, Kirkendall maintains that the trial court abused its discretion when it sentenced him to five years' community control consisting of "24/7 lockdown" with an exception for "verified treatment." For its part, the State argues that we should affirm Kirkendall's sentence because the trial court considered the relevant sentencing factors and principles, Kirkendall represents a serious threat to himself and others, and intensive supervision is required to punish Kirkendall and to ensure the safety of the community.

**{¶14}** But because the sentencing court exceeded its authority by imposing "24/7 lockdown" with only an exception for "verified treatment," we must vacate the sentence.

**{¶15}** In Ohio, trial courts have "broad discretion . . . in imposing community-control sanctions." *State v. Talty*, 2004-Ohio-4888, ¶ 10. We review misdemeanor sentencing for an abuse of discretion. *State v. Barnes*, 2022-Ohio-1738, ¶ 4 (1st Dist.). An abuse of discretion "implies that the trial court's decision was unreasonable, arbitrary, or unconscionable." *State v. Dowdy*, 2024-Ohio-1045, ¶ 6 (1st Dist.). But

5

"courts lack the discretion to make errors of law, particularly when the trial court's decision goes against the plain language of a statute or rule." *Johnson v. Abdullah*, 2021-Ohio-3304, ¶ 39. We review compliance with sentencing statutes de novo. *Barnes* at ¶ 4.

**{¶16}** A trial court fashioning community-control sanctions as part of a misdemeanor sentence can impose a combination of "community control sanctions authorized by section 2929.26, 2929.27, or 2929.28 of the Revised Code." R.C. 2929.25(A)(1)(b). While the trial court referred to the relevant community-control condition as "24/7 lockdown with hours out only for treatment," we understand it to constitute house arrest. *See* R.C. 2929.27(A)(2) ("[T]he court . . . may impose upon the offender . . . [a] term of house arrest with electronic monitoring.").

**{¶17}** The relevant question is whether "24/7 lockdown with hours out *only for treatment*" is an authorized community-control sanction. House arrest is a "period of confinement . . . in the offender's home or in other premises specified by the sentencing court." R.C. 2929.01(P). Relevant here, the offender must "remain in the offender's home or other specified premises for the specified period of confinement, *except for periods of time during which the offender is at the offender's place of employment* or at other premises as authorized by the sentencing court or by the parole board." (Emphasis added.) R.C. 2929.01(P)(1).

**{¶18}** We construe statutes in a manner that will carry out the legislature's intent. *State v. Bryant*, 2020-Ohio-1041, ¶ 12. And we construe statutory texts "according to the rules of grammar and common usage." R.C. 1.42. In addition to considering the meaning of critical words and phrases, courts must also look to the phrase's "'placement and purpose in the statutory scheme.'" *Holloway v. United States*, 526 U.S. 1, 6 (1999), quoting *Bailey v. United States*, 516 U.S. 137, 145 (1995).

6

**{¶19}** We hold that R.C. 2929.01(P)(1)'s plain language requires courts to allow offenders time away from their confinement for employment. The trial court's imposition of "24/7 lockdown with hours out *only for treatment*" is therefore inconsistent with the statutory definition of house arrest.

**{¶20}** R.C. 2929.01(P)(1) allows an offender to leave home for "periods of time during which the offender is at the offender's place of employment or at other premises as authorized by the sentencing court." While the statute references court authorization, our reading of R.C. 2929.01(P)'s plain language convinces us that "as authorized by the sentencing court" modifies only the phrase "or at other premises." The statute's use of "or" after "offender's place of employment" and immediately before "at other premises" "indicates 'an alternative between different or unlike things.'" *State v. Bowen*, 139 Ohio App.3d 41, 44 (1st Dist. 2000), quoting *Pizza v. Sunset Fireworks Co., Inc.*, 25 Ohio St.3d 1, 4-5 (1986).

**{¶21}** As a standard rule of statutory interpretation, the "rule of the last antecedent" instructs that "modifying words or phrases 'only apply to the words or phrases immediately preceding or subsequent to the word, and will not modify the other words, phrases or clauses more remote, unless the intent of the legislature clearly requires such an extension.'" *Id.*, quoting *In re Shaffer*, 228 B.R. 892, 894 (Bankr.N.D.Ohio 1998); *see Barnhart v. Thomas*, 540 U.S. 20, 26 (2003). Here, "as authorized by the sentencing court" immediately follows "at other premises" but is separated from "the offender's place of employment" by the "or." We discern no intent in the statutory text requiring offenders to have court authorization before being permitted to go to their places of employment.

**{¶22}** Under the statute's plain language, Kirkendall and other defendants placed on house arrest, by default, must have an opportunity to work. And these

defendants may also leave their houses to go to "other premises," but only if approved by the sentencing court. R.C. 2929.01(P)(1).

**{¶23}** This reading makes sense under Ohio's statutory scheme for sentences. For other sentencing options that are less restrictive than prison or jail, the legislature prioritizes the convicted person's ability to work. For instance, an alternative residential facility must "provide[] programs through which *the offender may seek or maintain employment* or may receive education, training, treatment, or habilitation." (Emphasis added.) R.C. 2929.01(A)(1)(a). And intensive probation supervision consists of supervision and contact "while the offender is seeking or maintaining necessary employment." R.C. 2929.01(Q).

**{¶24}** This reading also makes sense from a policy perspective. A misdemeanor sentence must be guided by two purposes: "to protect the public from future crime by the offender and others and to punish the offender." R.C. 2929.21(A). To realize those purposes, a sentencing court must consider, among other things, the defendant's rehabilitation. *Id.* Courts consider employment an "important step in [a probationer's] rehabilitation." *State v. Cauthen*, 2015-Ohio-272, ¶ 15 (1st Dist.). Working "helps end the financial incentive of criminal behavior and can, by itself, be salutary, encouraging a sense of accomplishment and achievement in an offender seeking rehabilitation." *Id.* at ¶ 15.

**{¶25}** In sum, the trial court exceeded its authority under R.C. 2929.25(A)(1) when it sentenced Kirkendall to five years of "24/7 lockdown with hours out *only for treatment*" as a community-control sanction, which restricted Kirkendall's ability to

work.[1] While not required, when placing defendants on house arrest, the best practice would be for trial courts to advise these defendants that they may leave their confinement to go to their place of employment. We sustain the assignment of error.

### III.    Conclusion

{¶26} We sustain Kirkendall's assignment of error, vacate his sentence, and remand the matter for resentencing.

Judgment vacated and cause remanded.

**ZAYAS, P.J.,** and **CROUSE, J.,** concur.

---

[1] The trial court appears to have recognized as much when it attempted, without jurisdiction, to modify the terms of Kirkendall's house arrest to allow him to leave his house for work. It lacked jurisdiction because Kirkendall had appealed his sentence. "'When a case has been appealed, the trial court retains all jurisdiction not inconsistent with the court of appeals' jurisdiction to reverse, modify, or affirm the judgment.'" *Yee v. Erie Cty. Sheriff's Dept.,* 51 Ohio St.3d 43, 44 (1990), quoting *In re Kurtzhalz,* 141 Ohio St. 432 (1943), paragraph two of the syllabus. While premature, the trial court's ultimate decision to allow Kirkendall to leave his residence for work was correct.